## No. 25817

### The People of the State of Colorado v. Thomas W. Loger
(535 P.2d 210)

Decided April 28, 1975.                    Rehearing denied May 19, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lee Belstock, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant was found guilty by a jury of first-degree murder and was sentenced to a life term in the penitentiary. On this appeal, his main argument is directed against an instruction to the jury. This instruction contains an incorrect statement of the law pertaining to manslaughter. The error is grievous. The judgment is therefore reversed and the cause is remanded for a new trial.

The defendant and Terry Brasel, the victim, were former roommates. An altercation concerning Brasel's girl friend was a cause of hostility between them. There was testimony that Brasel had beaten up the defendant and had knocked out a front tooth. Brasel was described as being six feet tall and weighing 195 to

200 pounds. The defendant was five feet nine inches tall and weighed about 150 pounds. The defendant testified that Brasel had told him to be at Brasel's apartment on June 12, 1971 to pay his share of a phone bill. Defendant went to the apartment. A roommate of Brasel's was there and stated that Brasel was out but would return in a short time. The defendant waited for him in the apartment. When Brasel returned, he asked the defendant for the money. The defendant stated he did not have the money. The defendant testified that Brasel then swung an "eight-pack" of pop bottles at him; that out of fear, he jumped up, pulled out a gun, and fired the fatal shot. He further testified that he took the gun with him for protection in case Brasel attempted to beat him up again.

## I.

■ The trial court instructed the jury on manslaughter as follows:

"[M]anslaughter is the unlawful killing of a human being without malice either expressed or implied, and without any mixture of deliberation whatever. Manslaughter is either voluntary, or involuntary. In cases of voluntary manslaughter there must be a serious and highly provoking injury inflicted upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing. The killing must be the result of that sudden violent impulse of passion supposed to be irresistible; for if there should appear to have been an interval between the assault or provocation given and the killing sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge and punished as murder. Involuntary manslaughter consists in the killing of a human being without intent to do so; in the commission of an unlawful act, or a lawful act which might probably produce such a consequence in an unlawful manner. Where the involuntary killing occurs in the commission of an unlawful act which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder."

In *People v. Morant,* 179 Colo. 287, 499 P.2d 1173 (1972), this court reversed a conviction, and found plain error, where a

nearly identical instruction was given and the jury returned a verdict of first-degree murder. The instruction given in this case differs from that given in *Morant* only by the insertion of the word "involuntary" in the last sentence of this instruction. Clearly, the instruction given in this case involves error which is even more grievous than the error in *Morant* because the jury here is, in effect, instructed that the "involuntary killing . . . shall be deemed and adjudged murder." This instruction therefore could have reasonably nullified any consideration the jury may have given to a manslaughter verdict under the evidence in this case. Also, the defense theory of self-defense could have been devalued by the jury because of this sentence in the instruction.

The language of the last full sentence of this instruction, apparently taken from C.R.S. 1963, 40-2-7, does not define murder. Rather, it indicates what is *not* involuntary manslaughter. By including this language in the instruction, the instruction was rendered confusing and contradictory not only internally but also when considered with the other instructions. For these reasons, this last full sentence in the manslaughter instruction makes it an incorrect instruction on the law pertaining to manslaughter.

## II.

Because this judgment must be reversed, the only remaining issues which will be discussed are those which may arise when this case is retried.

The instruction on "abandoned and malignant heart" was properly submitted to the jury. Under the statute in effect at the time of this homicide, malice could be implied when the circumstance of the killing indicated an abandoned and malignant heart. In *People v. Garcia,* 186 Colo. 167, 526 P.2d 292 (1974), we indicated that a jury could properly infer malice from the use of a deadly weapon. Clearly then, an abandoned and malignant heart can be inferred from the unrestrained use of a deadly weapon.

## III.

The defendant urges on this appeal that he should have been granted a bifurcated trial in accordance with section 16-11-103, C.R.S. 1973. (Trial on merits and penalty bifurcated in class 1 felonies). The defendant argues that this provision is

procedural, and because the effective date of the provision was prior to the date of his trial, he is entitled to its benefits. The attorney general responds that the savings clause of the new Criminal Code, section 18-1-103(2), C.R.S. 1973, provides that prosecutions prior to July 1, 1972 are to be tried in accord with the law existing at the time of the offense.

The statute cited by the attorney general applies only to the Criminal Code, and not to the Code of Criminal Procedure. The Criminal Code was enacted as a separate piece of legislation, and occupies a separate chapter in the Colorado Revised Statutes 1973.

When enacted, the new Code of Criminal Procedure specifically provided that
"The provisions of this code are intended to create, define, and protect rights, duties, and obligations as distinguished from matters wholly procedural." Section 16-1-102, C.R.S. 1973.
Nevertheless, an examination of the Act and the provision allowing for bifurcated trial when a first-degree murder verdict is returned clearly indicates that these provisions of the statute are, if not wholly procedural, largely so. In a situation such as this, where the defendant requested a bifurcated trial in accordance with section 16-11-103, C.R.S. 1973, and preserved that request and his objections to the denial of the request at every possible moment throughout the trial, we are of the opinion that the defendant should have been granted a bifurcated trial.

The judgment is reversed and the cause is remanded for a new trial.

MR. JUSTICE LEE dissents.

MR. JUSTICE LEE dissenting:

I respectfully dissent.

The instruction on manslaughter, upon which the majority predicates prejudicial error justifying reversal of the conviction, was not objected to at trial, nor was the matter raised in defendant's motion for a new trial. For the first time, on appeal, it is asserted that the instruction was erroneous.

Generally speaking, grounds for reversal must be preserved at the trial level by objection and thereafter on motion for new trial. While this Court may recognize error in the record to avoid

manifest injustice (C.A.R. 1(d)), the error must be clearly evident and plainly prejudicial to the rights of the accused. *Mingo v. People,* 171 Colo. 474, 468 P.2d 849. In my view, the instruction as it relates to involuntary manslaughter is not grievous, erroneous or prejudicial. The instruction is phrased in the language of the statute defining involuntary manslaughter, C.R.S. 1963, 40-2-7. This Court has many times approved instructions defining a crime charged in the language of the statute. *Jordan v. People,* 161 Colo. 54, 419 P.2d 656; *Block v. People,* 125 Colo. 36, 240 P.2d 512; *Stoltz v. People,* 59 Colo. 342, 148 P.2d 865. Specifically, in *Balltrip v. People,* 157 Colo. 108, 401 P.2d 259, this Court approved an instruction on involuntary manslaughter in the language of the statute. In light of the continued and repeated judicial approval of instructions phrased in statutory language, I find it difficult to reconcile the application of a different rule in this case, particularly where defendant did not raise any objections to the language of the instruction at the trial.

In my view, the case of *People v. Morant,* 179 Colo. 287, 499 P.2d 1173, is inapposite to this case. There, the instruction concerned the crime of voluntary manslaughter and not involuntary manslaughter. The error in the voluntary manslaughter instruction consisted of taking a portion of the involuntary manslaughter definition and incorporating it in the definition of voluntary manslaughter. We do not have that situation in this case.

Accordingly, I would affirm the judgment of conviction.