The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Baruch J. BACHOFER, Defendant–Appellant.**

No. 03CA1311.

Colorado Court of Appeals, Div. VI.

Jan. 24, 2008.

Rehearing Denied March 13, 2008.

Certiorari Denied Sept. 2, 2008.

John W. Suthers, Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Todd E. Mair, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

Defendant, Baruch J. Bachofer, appeals the judgment of conviction entered on jury verdicts finding him guilty of felony menacing, reckless endangerment, false imprisonment, and failure to leave premises. He also appeals the sentences imposed for menacing and failure to leave premises. We vacate those sentences, remand for resentencing, and otherwise affirm.

## I. Background

Bachofer engaged in a nine-hour standoff with police. During the standoff, he barricaded himself inside his motor home with his fifteen-year-old girlfriend, N.S., and fired shots at the officers.

Bachofer was tried on eighteen counts of attempted first degree murder (extreme indifference), five counts of attempted first degree murder (after deliberation), and one count each of first degree kidnapping, failure to leave premises, and sexual assault. In addition to the charged offenses, the court instructed the jury on the lesser offenses of reckless endangerment, felony menacing, and false imprisonment.

Bachofer's theory of defense combined a general denial with an assertion of self-defense:

> Mr. Bachofer asserts that ... he did not kidnap [N.S.] or attempt to kill anyone. Following the detonation of the flash-bang device, the firing of multiple sniper rounds at his motor home and the shooting of tear gas into his motor home he believed that the police were trying to kill him and [N.S.]

> Mr. Bachofer and [N.S.] pretended that she was a hostage in an attempt to deceive the police into letting him go.

> Mr. Bachofer fired shots in order to tell the police to stay back. He was not acting with extreme indifference to human life and did not create a grave risk of death to anyone when he attempted to protect himself and [N.S.] from harm that he believed was imminent.

The jury acquitted Bachofer of attempted first degree murder, kidnapping, and sexual assault. It convicted him of seventeen counts of reckless endangerment, five counts of felony menacing, one count of false imprisonment, and one count of failure to leave premises.

The trial court sentenced Bachofer to forty-two years in prison, as follows: (1) an aggravated range term of six years for each of the five felony menacing counts, to be served consecutively; (2) a consecutive aggravated range sentence of twelve years for failure to leave premises; and (3) concurrent terms of six to twelve months on the remaining misdemeanor counts.

## II. Destruction of Evidence

Before trial, Bachofer filed a motion to dismiss all charges. He asserted that the police had removed tarps from the windows of his motor home, thereby destroying evidence in violation of the due process principles announced in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The trial court denied this motion.

Bachofer now contends that the trial court erred in denying his motion. We disagree.

■ To establish a due process violation for the failure to preserve exculpatory evidence, the defendant must show three things: (1) the evidence was destroyed by state action; (2) the evidence possessed an exculpatory value that was apparent before it was destroyed; and (3) the defendant was unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 488–89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *People v. Braunthal*, 31 P.3d 167, 173 (Colo.2001).

■ If the evidence was not apparently exculpatory when it was destroyed and was merely potentially useful, the defendant must show that the state agents acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *People v. Wyman*, 788 P.2d 1278, 1279 (Colo.1990).

■ Here, we assume that (1) significant information was lost when the tarps were removed, and (2) the missing information might have been favorable to Bachofer because it could have provided a basis for impeaching the bullet-trajectory analysis offered by a prosecution witness. We nevertheless conclude that Bachofer suffered no due process violation. Bachofer did not show that the tarps were removed in bad faith, nor did he show that the placement

of the tarps had an exculpatory value that was apparent when the tarps were removed.

Moreover, any potential exculpatory value was nullified by the jury's decision to acquit Bachofer of attempted first degree murder. An alternative bullet-trajectory analysis would not have been helpful in defending against the charges of felony menacing and reckless endangerment because it was undisputed that Bachofer shot in the general direction of the police. Nor would it have been helpful in defending against the charges of false imprisonment or failure to leave premises.

## III. Confidential Records

Before trial, Bachofer subpoenaed records from N.S.'s schools, juvenile centers, treatment facilities, and former employer. The trial court ruled that the subpoenas were too broad and quashed them under Crim. P. 17(c). The court nevertheless reviewed some records in camera to determine whether they contained any reference to Bachofer or the incident. After reviewing the records, the court declined to disclose any information.

Bachofer now argues that the trial court erred in refusing to order the disclosure of school records and medical records. We find no basis for reversal.

### A. School Records

The parties present this issue: May the defendant obtain school records of a student who is a witness in a criminal case without the consent of the student or the student's parents? We conclude that the answer is yes.

This issue is governed, at least initially, by section 22–1–123, C.R.S.2007. This state statute ensures that Colorado schools comply with federal law—namely, the Family Educational Rights and Privacy Act of 1974 (FERPA), which is codified as 20 U.S.C. § 1232g. As pertinent here, the state statute provides: "A school district shall not release the education records of a student to any person, agency, or organization without the prior written consent of the parent or

legal guardian of the student except as otherwise permitted in 20 U.S.C. sec. 1232g(b)." § 22–1–123(3), C.R.S.2007.

FERPA in turn employs "a carrot-and-stick approach" to discourage the unauthorized disclosure of confidential school records. *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 68 (1st Cir.2002) ("[T]he carrot is federal funding; the stick is the termination of such funding. . . ."). FERPA generally contemplates that school records may be released only if the student's parents have consented in writing. 20 U.S.C. § 1232g(b)(1), (b)(2)(A). (If the student is eighteen or older, his or her consent is required instead of parental consent. 20 U.S.C. § 1232g(d).) But it also lists several exceptions.

We consider two exceptions here.

### 1. Law Enforcement Purpose

FERPA contemplates that school records may be released in response to a grand jury subpoena or "any other subpoena issued for a law enforcement purpose." 20 U.S.C. § 1232g(b)(1)(J)(ii).

Bachofer argued at trial that a subpoena duces tecum, issued by a defendant in a criminal case, is a "subpoena issued for a law enforcement purpose" under this exception. We conclude that the trial court properly rejected this argument.

Because FERPA does not define "law enforcement purpose," we assign the term its plain and ordinary meaning. *See People v. Yascavage*, 101 P.3d 1090, 1094 (Colo.2004). And we conclude that a subpoena is issued for a law enforcement purpose if it is intended to advance the "detection and punishment of violations of the law." *Black's Law Dictionary* 901 (8th ed.2004); *see also United States v. Bertie County Bd. of Educ.*, 319 F.Supp.2d 669, 671–72 (E.D.N.C.2004) (government subpoena, issued to enforce compliance with the Civil Rights Act of 1964, was for "law enforcement purposes" within the meaning of 20 U.S.C. § 1232g(b)(1)(C)(ii)).

Because Bachofer's subpoenas were not intended to advance the detection or punishment of any legal violation, the trial court properly declined to order disclosure under this exception.

### 2. Judicial Balancing

FERPA also contemplates the release of school records "in compliance with judicial order, or pursuant to any lawfully issued subpoena," if the student or parents have been notified. 20 U.S.C. § 1232g(b)(2)(B).

Colorado's appellate courts have not previously addressed the discoverability of school records under the combined operation of section 22–1–123(3) and § 1232g(b)(2)(B). But other courts have addressed this issue under FERPA and similar state statutes, and they have concluded that FERPA does not create a privilege against disclosure and that school records may be discovered under § 1232g(b)(2) upon a proper showing of need. *See Zaal v. State*, 326 Md. 54, 602 A.2d 1247, 1255–56 (1992) (addressing discovery of school records by a defendant in a criminal case); *see also Catrone v. Miles*, 215 Ariz. 446, 160 P.3d 1204, 1211–12 (Ct.App.2007) (discovery of school records by a party in a civil case).

We agree with these observations. Neither the federal nor the state statute erects an absolute privilege against disclosure. *See* § 1232g; § 22–1–123(3). Instead, the statutes protect the privacy rights of students and parents through a general rule of confidentiality that may be overcome in certain circumstances. Accordingly, we conclude that a court may order the release of confidential school records to a party in a criminal case upon a proper showing of need.

In deciding whether to order disclosure of school records under § 1232g(b)(2), courts should heed the following:

1. The court must ascertain whether the student or parents have been notified and given an opportunity to respond. *See* 34 C.F.R. § 99.31(a)(9)(ii) (school records may be released "only if the agency or institution makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action").

2. If the student or parents do not consent to release of the records, the court must balance the student's and parents' confidentiality interests against the party's need for the requested information. *Zaal,* 602 A.2d at 1256. The court may review the school records in camera to determine whether disclosure is required. *See id.* at 1264 (court may review records in camera or may, in its discretion, permit review by counsel as officers of the court, subject to restrictions).

3. To satisfy due process requirements under *Brady v. Maryland,* the court must disclose any information that is materially favorable to the defendant. *See Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (defining components of *Brady* violation). The court should also disclose inculpatory information that will be of material assistance in preparing the defense. *Cf. People v. Jowell,* — P.3d —, —, 2008 WL 191485 (Colo.App. No. 04CA1816, Jan. 24, 2008) (under statute governing disclosure of confidential social services records, "the court should disclose even inculpatory information when such disclosure would materially assist in preparing the defense").

4. The court's determination will depend on a variety of case-specific factors. Among other things, the court should consider (1) the nature of the information sought, (2) the relationship between this information and the issue in dispute, and (3) the harm that may result from disclosure. *See Zaal,* 602 A.2d at 1261–62.

5. The court's ruling is subject to review for an abuse of discretion. *Cf. People v. Frost,* 5 P.3d 317, 324 (Colo.App. 1999) (order regarding disclosure of social service records reviewed for an abuse of discretion). The appellate court may inspect the undisclosed records in camera. *Cf. People v. Kyle,* 111 P.3d 491, 504 (Colo.App.2004) (conducting independent inspection of social service records); *Frost,* 5 P.3d at 324.

Here, Bachofer sought access to N.S.'s school records for the purpose of acquiring impeachment evidence. Although Bachofer's requests were not specific, the trial court properly granted an in camera review. *Cf. Exline v. Gunter,* 985 F.2d 487, 490 (10th Cir.1993) (in camera review for *Brady* material was constitutionally required where the defendant requested "anything in those [social services] reports relating to credibility [of potential child witnesses]").

◼ The review was flawed, however, because the trial court employed too narrow a standard. The court examined the records only to determine whether they contained any reference to Bachofer or the standoff with the police. The court should have determined whether the records contained evidence that would have materially undermined N.S.'s credibility, irrespective of whether it concerned Bachofer or the standoff. *See United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (impeachment evidence falls within the rule of *Brady* ).

Nevertheless, any error was harmless. After conducting our own in camera review, we conclude that N.S.'s school records contain no information that, if disclosed, would have led to a different outcome. Our conclusion rests on two observations:

1. N.S.'s school records contain no mention of legal proceedings that would have supported impeachment under the rule of *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

2. The records indicate that N.S. was an erratic and disruptive student and arguably could have led to the discovery of evidence that she had used drugs. But this information would have been cumulative to the impeachment evidence that Bachofer presented at trial:

• *Erratic behavior:* N.S. testified that she had run away from home many times since age twelve, had been in trouble before, and was familiar with the criminal justice system. Before living with Bachofer, who was thirty-one at the time of the offense, N.S.

had had relationships with men who were thirty-six and forty-three years old.

- *Drugs:* At the time of trial, N.S. was in a rehabilitation facility. She testified that she had injected methamphetamine the day of the standoff and had previously faced drug charges.
- *Dishonesty:* N.S. admitted telling Bachofer that she was pregnant when she was not. She admitted that she had lied about her age.

Because N.S.'s school records would have yielded nothing but cumulative information, we perceive no basis for reversal. *See Kyle,* 111 P.3d at 504 (on the basis of independent in camera review, appellate court concludes that trial court's failure to conduct review was harmless); *see also People v. Bradley,* 25 P.3d 1271, 1276 (Colo.App.2001) (prosecution's failure to disclosure information is not reversible error unless the withheld evidence is material to guilt or punishment); *cf. United States v. Mendoza–Paz,* 286 F.3d 1104, 1111 (9th Cir.2002) (same test under Fed. R.Crim.P. 16).

### B. Medical Records

■ N.S.'s medical records were privileged under section 13–90–107, C.R.S.2007. Because Bachofer did not show that N.S. had waived her privilege, the records were not discoverable. *See Clark v. Dist. Court,* 668 P.2d 3, 9 (Colo.1983); *People v. Tauer,* 847 P.2d 259, 261 (Colo.App.1993). The records were not subject to in camera review. *See People v. Sisneros,* 55 P.3d 797, 800 (Colo. 2002).

### IV. Self–Defense Instruction

Bachofer contends that his felony menacing and reckless endangerment convictions must be reversed for plain error in the court's jury instructions and the prosecutor's argument concerning self-defense. We disagree.

### A. Pertinent Events

After the evidence had been presented, the court met with counsel to fashion the jury instructions. The attorneys debated whether the jury should be instructed on self-defense. The prosecutor argued that the instruction was unnecessary because there was no evidence that Bachofer reasonably believed the police were about to use unlawful force in executing the arrest warrant. Defense counsel argued that there was at least a scintilla of evidence to support the instruction because Bachofer thought the police were going to shoot him. The court found the issue to be "a very close question" and agreed to give the instruction.

The court instructed the jury on self-defense, but its instructions were somewhat contradictory. The court instructed the jury that it could convict Bachofer of felony menacing or reckless endangerment only if the prosecution had proved the elements of the offenses beyond a reasonable doubt "without the affirmative defense in instruction no. 34." But Instruction 34 suggested that self-defense applied only to the charges of attempted first degree murder:

It is an affirmative defense to the crime of Attempted First Degree Murder after Deliberation that the defendant used physical force upon another person:

1. in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by the victim, and

2. he used the degree of force which he reasonably believed to be necessary for that purpose.

The prosecutor compounded the ambiguity by making this statement during closing argument: "Now, let's talk about the self-defense, a concept you may only consider on five counts of attempted first degree murder and [sic] deliberation, that does not apply to any other charges in the case, not extreme indifference, not kidnapping, not failing to leave, not sexual assault."

### B. Governing Law

■ A person may act in self-defense if he or she reasonably believes that a law enforcement officer is using or is about to use unreasonable or excessive force. *People v. Fuller,* 781 P.2d 647, 650 (Colo.1989). The person must hold a reasonable belief that the

appearance of danger, whether real or apparent, justifies his or her actions. *Beckett v. People,* 800 P.2d 74, 81 (Colo.1990).

 A defendant is entitled to an instruction advising the jury of the affirmative defense of self-defense if there is some evidence that justifies presenting the defense to the jury. *People v. Saavedra–Rodriguez,* 971 P.2d 223, 228 (Colo.1998). The prosecution bears the burden of disproving the affirmative defense beyond a reasonable doubt. Section 18–1–407(2), C.R.S.2007; *Vega v. People,* 893 P.2d 107 (Colo.1995).

Self-defense is an affirmative defense to the crime of felony menacing if the defendant (1) threatened force upon another person to defend against the use or imminent use of unlawful physical force, and (2) reasonably believed the degree of force threatened was necessary for that purpose. *See Beckett,* 800 P.2d at 77–78.

 A defendant may also present evidence that he or she acted in self-defense if the charges involve reckless or criminally negligent conduct. *People v. Roberts,* 983 P.2d 11, 14 (Colo.App.1998) (citing *People v. Fink,* 194 Colo. 516, 519, 574 P.2d 81, 83 (1978)). The trial court should instruct the jury that, in determining whether the defendant acted recklessly, it must consider whether the defendant reasonably believed it necessary for him to defend himself or another person from the victim's use or imminent use of unlawful physical force. *Roberts,* 983 P.2d at 14.

## C. Discussion

 The People suggest that we apply the invited error doctrine because defense counsel agreed to the self-defense instruction as given. We reject this suggestion. The error was apparently the result of an oversight and was not the result of a strategic decision. We therefore review for plain error. *See People v. Stewart,* 55 P.3d 107, 119 (Colo.2002).

 Under the plain error standard, Bachofer must identify (1) an error, (2) that was obvious, and (3) so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See People v. Miller,* 113 P.3d 743, 750 (Colo.2005). The supreme court has stated that an instructional error warrants relief under the plain error standard if there is a "reasonable possibility" that the error contributed to the conviction. *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001) (quoting *Bogdanov v. People,* 941 P.2d 247, 255–56 (Colo.1997)).

 Here, the court's instructions and the prosecutor's comments were obviously erroneous. The instructions and comments contradictorily indicated that the jury (1) was required to consider self-defense in deciding whether Bachofer committed felony menacing and reckless endangerment, and (2) could consider self-defense only as it related to the charges of attempted first degree murder after deliberation. This sort of contradiction is plainly wrong. *See People v. Riley,* 708 P.2d 1359, 1366 (Colo.1985) (conviction reversed where the "trial court presented the jury with irreconcilable statements about the requisite culpability for a securities fraud violation"); *People v. Loger,* 188 Colo. 291, 294, 535 P.2d 210, 211 (1975) (conviction reversed where instruction was "confusing and contradictory not only internally but also when considered with the other instructions").

 We conclude, however, that the error did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the jury's verdict.

Evidence at trial established the following:

• Prior to the standoff, Bachofer was aware that there was an active warrant for his arrest out of Weld County. In an attempt to evade arrest, Bachofer moved his motor home and parked it behind a friend's home in Arvada.

• Bachofer bought a semi-automatic handgun and engaged in target practice so that he could fire multiple rounds at officers if they tried to arrest him. He slept with the gun strapped to his hand, and he had multiple rounds of ammunition in his possession. He also installed motion detectors and surveillance cameras equipped with night-vision technolo-

gy outside the motor home so that he could monitor the police if they attempted to approach and arrest him.

- As early as 6 a.m. on the day of the standoff, Bachofer was aware that police officers were assembling outside the motor home. At approximately 7 a.m., Bachofer telephoned an acquaintance and told him that the police were there to arrest him and had surrounded the motor home. Bachofer said that he and N.S. were "going to die."

- At approximately 8:30 a.m., an officer made a bullhorn announcement. The officer identified himself, told Bachofer that the police were there to execute an arrest warrant, and ordered Bachofer to come out with his hands up. The officer testified that he made several more announcements encouraging Bachofer to surrender. Officers heard movement inside the motor home, but Bachofer did not surrender.

- At 8:45 a.m., officers detonated a flash-bang device outside the motor home. In response, Bachofer started the motor home's engine. To prevent Bachofer from escaping, officers fired shots at the motor home's tires and engine compartment. Officers also fired several rounds of tear gas into the motor home in an effort to force Bachofer out of the vehicle.

- After the tear gas had been fired, Bachofer began shooting at the officers. The officers retreated, took cover, and did not return fire.

- At approximately 9 a.m., an officer made another bullhorn announcement. He stated that no one had been injured in the shooting and encouraged Bachofer to surrender peacefully. Negotiators also began communicating with Bachofer by bullhorn and telephone and encouraged him to surrender.

- Throughout the day, officers and negotiators continued communicating with Bachofer. Bachofer requested a getaway vehicle and repeatedly threatened to kill N.S. and himself.

- At approximately 5 p.m., officers heard a commotion inside the motor home.

Fearing for N.S.'s safety, officers fired several more rounds of tear gas into the motor home in an attempt to force Bachofer out. Moments later, Bachofer began firing at officers. Officers did not return fire.

- A short time later, N.S. fled the motor home. Bachofer soon followed, and he was taken into custody.

On this evidence, no jury could have found that Bachofer acted in reasonable self-defense against the imminent use of unlawful physical force. *See State v. Tyler,* 251 Kan. 616, 840 P.2d 413, 423 (1992) (where the defendant was previously aware that the police might raid his home, and where a person who clearly identified himself as a law enforcement officer entered the home and ordered the defendant to get on the floor, no reasonable person in the defendant's position could have perceived self-defense to be necessary); *see also Baze v. Commonwealth,* 965 S.W.2d 817, 821–22 (Ky.1997) (the defendant's belief that it was necessary to act in self-defense was unreasonable under the circumstances; police officers identified themselves, the defendant knew they were there to arrest him, and the officers acted under color of authority and used no more force than necessary to effect the arrest).

We therefore conclude that the error in the court's jury instructions and the prosecutor's argument does not warrant reversal as plain error.

### V. Other Challenges to Judgment

 Bachofer challenges the judgment of conviction on several other grounds. We reject those contentions as follows:

1. Under the standard established in *Carrillo v. People,* 974 P.2d 478 (Colo. 1999), the trial court enjoys wide discretion in deciding challenges for cause. Here, the court did not abuse its discretion when it declined to remove potential juror E for cause. Although E initially stated that he would be biased against Bachofer if "there was underage sexual contact," he later agreed that he could follow the law and be fair and impartial. *See People v.*

*Griffin,* 985 P.2d 15, 20 (Colo.App. 1998).

2. The trial court did not deprive Bachofer of his right to a unanimous verdict on the felony menacing charges. The jury returned a separate verdict as to each named victim, and the court's unanimity instruction sufficiently informed the jurors that they must agree that the same act or acts formed the basis of each count. *See Thomas v. People,* 803 P.2d 144, 153–54 (Colo. 1990).

3. The trial court properly instructed the jury that the defense of voluntary intoxication applies only to specific intent crimes. "It is the settled law of this jurisdiction that evidence of self-induced intoxication is not admissible to negate the culpability element of 'knowingly.' " *People v. Aragon,* 653 P.2d 715, 719 (Colo.1982). Contrary to Bachofer's suggestion, *People v. Harlan,* 8 P.3d 448 (Colo.2000), did not change this settled rule of law.

## VI. Sentencing

Bachofer contends that he must be resentenced for menacing and failure to leave premises. We agree.

During the sentencing hearing, the trial court stated:

> I first determined that Mr. Bachofer was . . . on bond at the time that the offenses of which the jury convicted him occurred, so the sentences are enhanced, so each of the felony menacing sentences has a sentencing range of one to six years rather than the three years maximum. The failure to leave premises has a maximum sentence of twelve years rather than six.

After Bachofer was sentenced, a division of this court reversed Bachofer's conviction on the offense for which he was on bond. *See People v. Bachofer,* 85 P.3d 615, 618 (Colo. App.2003). Those charges were later dismissed.

These events retroactively undermined the validity of the trial court's reliance on the "on bond" enhancer. Because this enhancer required the imposition of an aggravated range sentence, we cannot be certain that the trial court would have imposed the same sentence in the exercise of its discretion.

We therefore vacate the sentence and remand for a new sentencing hearing. The trial court shall impose a new sentence without relying on section 18–1.3–401(9), C.R.S. 2007, and may consider any other mandatory or discretionary aggravating circumstance in compliance with *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *See People v. Elie,* 148 P.3d 359, 367 (Colo. App.2006); *People v. Tuck,* 937 P.2d 810, 813 (Colo.App.1996).

The judgment is affirmed. The sentences imposed for menacing and failure to leave premises are vacated, and the case is remanded for resentencing on those convictions.

Judge DAILEY and Judge GRAHAM concur.