19CA0108 Peo v Miranda 01-27-2022 COLORADO COURT OF APPEALS Court of Appeals No. 19CA0108 City and County of Denver District Court No. 17CR2725 Honorable, John W. Madden IV, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Daniel Estrada Miranda, Defendant-Appellant. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division V Opinion by JUDGE WELLING Dunn and Yun, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 27, 2022 Philip J. Weiser, Attorney General, Jennifer L. Carty, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Nathaniel E. Deakins, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant
1 ¶ 1 Defendant, Daniel Estrada Miranda, appeals his judgment of conviction for sexual assault on a child by one in a position of trust, sexual assault on a child as part of a pattern of abuse, and sexual assault on a child. We affirm the judgment but remand for correction of the mittimus. I. Background ¶ 2 The victim lived with her father, her primary parent, but spent weekends with her maternal grandmother and Miranda, her grandmother’s boyfriend. In 2017, the victim told her father that Miranda had touched her inappropriately when she was between the ages of eight and eleven. The victim testified about three separate incidents where Miranda had touched her inappropriately — the couch incident, the bedroom incident, and the living room incident. ¶ 3 Following a jury trial, Miranda was found guilty on seven separate counts:  Count 1: Sexual assault on a child - pattern of abuse (couch incident) (class 3 felony);  Count 2: Sexual assault on a child - position of trust (couch incident) (class 3 felony); 
2  Count 3: Sexual assault on a child - position of trust (bedroom incident) (class 3 felony);  Count 4: Sexual assault on a child - position of trust (living room incident) (class 3 felony);  Count 5: Sexual assault on a child (bedroom incident) (class 4 felony);  Count 6: Sexual assault on a child (living room incident) (class 4 felony); and  Count 7: Sexual assault on a child (couch incident) (class 4 felony). II. Discussion ¶ 4 On appeal, Miranda contends that the trial court erred when it  excluded, under the rape shield statute, relevant defense evidence offered to show the victim’s bias and motive to fabricate sexual abuse allegations;  quashed Miranda’s subpoena duces tecum to inspect the victim’s school records;  refused all defense attempts to obtain and use evidence to impeach the victim regarding a “sexting” incident; and 
3  entered judgments for the class 3 felony versions of sexual assault on a child by one in a position of trust when the jury verdicts reflected convictions only for the class 4 felony versions of that offense. ¶ 5 Miranda also contends that this court should remand for correction of the mittimus to vacate count 7 because it’s the same crime as count 1, and to correct the mittimus to specify the length of parole term for each sentence. ¶ 6 We affirm the judgment but remand for correction of the mittimus to (1) vacate count 7, because it is the same crime as count 1, (2) to reflect a controlling mandatory parole period of twenty years to life, and (3) to remove the use of the word “merge” and clarify which sentences run concurrently to one another. A. Rape Shield — Witness Testimony ¶ 7 Miranda first contends that the trial court erred when it excluded witness testimony under the rape shield statute, section 18-3-407, C.R.S. 2021. 1. Additional Facts ¶ 8 Miranda sought to introduce the victim’s mother’s testimony regarding a discussion she had with the victim when the victim was 
4 ten years old (before the outcry). The discussion was about inappropriate touching, and during the conversation the mother revealed to the victim that she too was molested when she was eight or nine years old. The trial court denied Miranda’s request to admit evidence of the mother’s sexual abuse, finding as follows: the victim was thirteen when she outcried, and therefore the evidence wasn’t probative for demonstrating an alternate source of the victim’s sexual knowledge; the evidence wasn’t probative of motive; and the victim’s description of her abuse wasn’t particularly similar to the mother’s description of her abuse. For these reasons, the trial court found that the evidence wasn’t sufficiently relevant to pierce the rape shield. ¶ 9 The trial court allowed the mother to testify at trial that she had discussed with the victim “stranger danger” and inappropriate touching, but the mother was precluded from testifying about her own victimization and subsequent sharing of that story with the victim. 2. Standard of Review ¶ 10 We review a trial court’s determination of the admissibility of evidence under the rape shield statute for an abuse of discretion. 
5 People v. Marx, 2019 COA 138, ¶ 40. “A trial court abuses its discretion when its ruling is (1) manifestly arbitrary, unreasonable, or unfair or (2) based on an erroneous understanding or application of the law.” People v. Casias, 2012 COA 117, ¶ 17. 3. Analysis ¶ 11 Miranda contends that the trial court erred by excluding the mother’s testimony regarding her own victimization because the victim’s story of her own abuse and the mother’s story of her abuse have similarities, indicating that the victim used the mother’s story as a basis for fabricating the abuse by Miranda. We disagree. ¶ 12 Evidence of the mother’s prior sexual abuse falls squarely within the purview of the rape shield statute because it concerns a witness’s prior sexual conduct. One purpose of the rape shield statute is to protect sexual assault victims and witnesses from humiliating public “fishing expeditions” into their sexual histories. People v. MacLeod, 176 P.3d 75, 79 (Colo. 2008) (citation omitted). The presumption of irrelevance of sexual conduct evidence applies regardless of the purpose for which the proponent seeks its admission. See id. at 76 (the rape shield applies to evidence of a victim’s or witness’s prior or subsequent sexual conduct no matter 
6 the purpose for which the proponent intends to introduce the evidence at trial). The trial court’s finding that Miranda didn’t overcome the presumption of irrelevance and inadmissibility is supported by the record because there is no nonspeculative connection to the victim’s allegation and the mother’s prior sexual conduct. People v. Salazar, 2012 CO 20, ¶ 17 (a trial court may exclude evidence which only has minimal probative value and which requires the jury to engage in undue speculation as to the probative value). We can find no compelling reason — and Miranda provides none — showing why or how the mother’s story motivated the victim to fabricate a sexual assault. As the trial court observed, because there was a gap of at least three years since the mother shared her story with the victim, any connection between the two accounts was remote at best, and therefore the mother’s testimony regarding her prior sexual abuse was properly excluded. See Fletcher v. People, 179 P.3d 969, 974 (Colo. 2007) (evidence which is too remote either in time or logical relation to a matter in dispute should not be admitted). Additionally, the victim’s mother wasn’t precluded from testifying altogether — she was still permitted to 
7 testify regarding having a conversation with the victim about inappropriate touching and “stranger danger.” ¶ 13 For the above reasons, the trial court didn’t abuse its discretion by precluding the victim’s mother’s description of her own abuse and subsequent sharing of her victimization with the victim. B. The Victim’s School Records ¶ 14 Miranda next contends that the trial court erred in quashing Miranda’s subpoena duces tecum to inspect the victim’s school records. 1. Additional Facts ¶ 15 Before trial, Miranda served a Crim. P. 17(c) subpoena on the custodian of records at the victim’s school compelling production of all school records pertaining to the victim, including: attendance records, disciplinary records, and performance records. The prosecution moved to quash the subpoena and the trial court granted the prosecution’s request. In its order, the trial court stated: The subpoena was issued in early November 2017 — shortly after [Miranda] pled not guilty, six months before the first trial date in this 
8 case, and even before the trial date had been set. The scope of the request, the timing of the subpoena, and other circumstances show that it was issued as means of conducting discovery (to look through all of the victim’s school records to see what might be there) rather than to secure production of specific documents for use at trial. 2. Legal Principles and Analysis ¶ 16 Miranda contends that the trial court abused its discretion when it failed to conduct an in camera review of the records before quashing the subpoena. We disagree. ¶ 17 We review a trial court’s refusal to disclose or inspect a victim’s education records for an abuse of discretion. People v. Bachofer, 192 P.3d 454, 461 (Colo. App. 2008). ¶ 18 Crim. P. 17(c) gives counsel in criminal cases the right to compel attendance of witnesses, as well as to compel a witness to produce documents by way of subpoena. Crim. P. 17(c) permits pretrial inspection of documentary evidence under the supervision of the court to “facilitate and expedite trials involving voluminous documents, not to grant additional discovery.” People v. Spykstra, 234 P.3d 662, 668 (Colo. 2010). 
9 ¶ 19 The trial court has the responsibility of balancing the defendant’s need for the information with the privacy interests of the student and her parents. Bachofer, 192 P.3d at 461; People v. Wittrein, 221 P.3d 1076, 1085 (Colo. 2009). Among the factors the court should consider are: “(1) the nature of the information sought, (2) the relationship between this information and the issue in dispute, and (3) the harm that may result from disclosure.” Bachofer, 192 P.3d at 461 (citing Zaal v. State, 602 A.2d 1247, 1261-62 (Md. 1992)). ¶ 20 If the trial court determines that the defendant’s need outweighs any privacy interests, then it should review the records in camera. Wittrein, 221 P.3d at 1085. The trial court, however, isn’t required to conduct an in camera review of the victim’s school records; to warrant an invasion of a student’s privacy, even by an in camera review, there must be a showing that the need for the information outweighs the victim’s right to privacy. Id. at 1079. ¶ 21 Here, Miranda made no proffer of need directly related to the victim’s school records. Instead, Miranda argues that the trial court should have looked through the entirety of the victim’s school records to determine the existence of any material required to be 
10 produced under Brady v. Maryland, 373 U.S. 83 (1963), without articulating, “in good faith, a specific need for the information contained in the records.” Wittrein, 221 P.3d at 1085. ¶ 22 The trial court determined that the scope and timing of the subpoena demonstrated that it was being used as a discovery tool rather than a method for securing specific documents for trial. The trial court didn’t abuse its discretion in reaching this conclusion. The trial court found that Miranda didn’t provide any specific need for the victim’s school records, and, based on the timing and scope of the subpoena, it was being used as a fishing expedition rather than a way to secure specific documents. ¶ 23 Accordingly, the trial court acted within the bounds of its discretion in declining to conduct an in camera review of these records. C. Sexting Incident ¶ 24 Miranda next contends that the trial court erred in refusing all defense attempts to obtain and use evidence to impeach the victim regarding a “sexting” incident. 
11 1. Additional Facts ¶ 25 In October 2016, before the victim’s February 2017 outcry, the victim was involved in a sexting incident where she was texting sexually explicit pictures — “butt pictures,” “boob pictures,” and “down below” pictures — to five different children. All six of the children admitted their involvement. The victim wasn’t criminally charged, but as a result of her involvement, she was required to complete a diversion program, which she finished in October 2017. ¶ 26 Before and during trial, the parties litigated the admissibility of the evidence of the victim’s involvement in the sexting incident and with law enforcement. First, prior to trial, the prosecution disclosed to the court documents regarding the sexting incident. Following an in camera review, the trial court declined to release the documents to the defense. ¶ 27 Second, Miranda sought permission to cross-examine the victim’s father about the extent to which the victim got in trouble with him and law enforcement based on the sexting incident. Miranda argued that the evidence was relevant because “claiming to have been sexually abused is uniquely effective at diverting any negative attention” from the sexting incident. Miranda also 
12 requested to introduce evidence that the victim was in trouble with the police at the time of her outcry, without introducing the reason for the trouble. The trial court excluded the evidence under the rape shield statute and CRE 403. ¶ 28 Finally, during trial Miranda moved to obtain evidence relating to benefits or inducements sought by or provided to the victim by the prosecution. Specifically, the defense sought to inspect an email exchange between one of the prosecuting attorneys and the prosecutor overseeing the victim’s compliance under the requirements of the diversion program. 2. Analysis ¶ 29 We will first address the use of the sexting incident to show motive to fabricate, then we will address the use of the victim’s involvement with law enforcement to show motive to fabricate, and, last, we will address the use of evidence of the prosecutor’s email exchange as evidence of bias. a. Evidence of Sexting Offense to Show Motive ¶ 30 The trial court declined to release documents to Miranda’s defense counsel that pertained to the victim’s involvement in the sexting incident and subsequent diversion program. The trial court 
13 found that disclosure of the records wasn’t necessary for the “resolution of an issue pending in the case.” ¶ 31 Because this was an evidentiary ruling by the trial court, we will review for an abuse of discretion. See Marx,, ¶ 40. The trial court excluded the evidence because admission would violate the protections afforded by the rape shield statute. Miranda argues that evidence that the victim was facing discipline for the sexting incident when she outcried established her motive to fabricate and deflect negative attention. Miranda argues that he was denied his constitutional right to a meaningful opportunity to present a complete defense, resulting in constitutional error by the trial court. ¶ 32 Because the record supports the trial court’s conclusion that Miranda’s argument for admitting evidence of the sexting incident didn’t overcome the protections of the rape shield statute, we conclude that the trial court didn’t abuse its discretion. The rape shield protections apply no matter the purpose for which the defendant intended to introduce evidence at trial. MacLeod, 176 P.3d at 78. The evidence of the sexting incident, Miranda argues, goes to his theory of defense — that the victim was lying and the sexting incident bears on her credibility. The evidence is 
14 presumptively irrelevant, however, because it falls squarely under the rape shield: Evidence of specific instances of the victim’s or a witness’s prior or subsequent sexual conduct, opinion evidence of the victim’s or a witness’s sexual conduct, and reputation evidence of the victim’s or a witness’s sexual conduct may be admissible only at trial and shall not be admitted in any other proceeding except at a proceeding pursuant to paragraph (c) of subsection (2) of this section. At trial, such evidence shall be presumed to be irrelevant . . . . § 18-3-407(1). ¶ 33 The trial court determined that the time gap between the sexting incident (October 2016) and the outcry (February 2017) made any causal link speculative at best. Additionally, the trial court determined that Miranda failed to provide any reason why the victim would wait five months to “divert any negative attention that may be on her for engaging in her own sexual misconduct.” Thus, the trial court found that the sexting incident wasn’t probative of the victim’s motive to make allegations against Miranda. These reasons and findings are supported by the record. Accordingly, the trial court’s decision to preclude the introduction of evidence of the sexting incident wasn’t an abuse of discretion. 
15 b. Evidence of Being in Trouble with Law Enforcement to Show Motive ¶ 34 Second, the trial court precluded Miranda’s counsel from cross-examining the victim’s father regarding the extent to which the victim was in trouble with him and with law enforcement regarding the sexting incident. The trial court also declined to permit the introduction of a sanitized version of the sexting incident — one that didn’t reveal the nature of the offense and would, instead, just tell the jury generally that the victim had been in trouble with law enforcement and her father. ¶ 35 In a pre-trial hearing, the victim’s father testified that the victim was never punished for using her cellphone or social media inappropriately. Finding the victim’s father’s testimony credible, the trial court concluded that cross-examining the father about his daughter being in trouble for the sexting incident would be of minimal probative value and that the father’s indication that the victim wasn’t in trouble at the time of the outcry mitigated any probative value. ¶ 36 Additionally, the trial court found that telling the jury that the victim had been in trouble for some unknown reason would 
16 potentially confuse the issues and would possibly require that the reason for the trouble be revealed, which would ultimately circumvent the ruling that the rape shield statute barred evidence of the sexting incident. ¶ 37 Because this was an evidentiary ruling by the trial court, we will again review for an abuse of discretion. See Marx, ¶ 40. We conclude that the trial court didn’t abuse its discretion in precluding Miranda from asking the victim’s father about whether she was in trouble with him or law enforcement at the time of the outcry. Its findings — that (1) disclosing the victim had been in trouble even without including the nature of the offense could lead to the rape shield being circumvented; (2) the temporal delay between being in trouble and the victim’s outcry (five months) makes any link between the two speculative; and (3) Miranda failed to show why the victim would fabricate an allegation five months after being in trouble, and why, five months later, the victim would feel the need to divert attention from herself — are all supported by the record and provide a sound basis for excluding the evidence under the rape shield statute and CRE 403. Accordingly, the trial court didn’t abuse its discretion. 
17 c. Evidence of Email Exchange Regarding Diversion Program to Show Bias ¶ 38 Miranda next contends that an email between a prosecutor in this case and the prosecutor supervising the victim’s diversion program should have been disclosed to the defense because it may have related to providing the victim with a benefit in exchange for her testimony, which, in turn, could have been used to show bias. ¶ 39 The email at issue was filed with this court under seal, and we have reviewed it in camera in order to exercise our independent judgment. See People in Interest of A.D.T., 232 P.3d 313, 319-20 (Colo. App. 2010) (“[I]n a case like this, in which the juvenile court has performed an in camera review and made disclosure determinations that are properly being challenged on appeal, the right to meaningful appellate review necessitates our performing an independent in camera review.”). In the email, the prosecutor in this case doesn’t ask the prosecutor in the diversion case to relieve the victim of any requirement of the diversion program, just that she not be subject to or provided with duplicate or conflicting services. 
18 ¶ 40 Based on our independent in camera review, we conclude that the email exchange wasn’t probative of bias and, even if provided to the defense, nothing about it would’ve been relevant or otherwise admissible. The prosecution in this case wasn’t asking that the victim be relieved of any requirement under the diversion program. ¶ 41 Simply put, even if the email exchange had been provided to the defense, nothing about it would’ve been admissible for impeachment purposes or otherwise. Accordingly, there’s no basis for reversal. D. Jury Instructions ¶ 42 Next, Miranda contends that the trial court erred when it entered convictions for the class 3 felony versions of sexual assault on a child by one in a position of trust when the jury verdicts reflected convictions only for the class 4 felony versions of that offense. We aren’t persuaded. 1. Additional Facts ¶ 43 The jury was provided with the following elemental instruction for the three sexual assault on a child charges: The elements of the crime of Sexual Assault on a Child are: 1. That the Defendant, 
19 2. in the State of Colorado, between and including January 1, 2011 and February 23, 2017, 3. knowingly, 4. subjected [the victim] who was not his spouse to any sexual contact, and 5. [the victim] was less than fifteen years of age, and 6. The Defendant was at least four years older than [the victim]. (Emphasis added.) ¶ 44 The jury was provided with the following elemental instruction for the three sexual assault on a child by one in a position of trust charges: The elements of the crime of Sexual Assault on a Child by One in a Position of Trust are: 1. That the Defendant, 2. in the State of Colorado, between and including approximately January 1, 2011, and February 23, 2017, 3. knowingly, 4. subjected [the victim], under eighteen years of age, who was not his spouse to any sexual contact, and 5. the Defendant was in a position of trust with respect to [the victim]. (Emphasis added.) ¶ 45 Miranda didn’t object to the jury instructions, and the jury returned guilty verdicts on all three of the sexual assault on a child 
20 charges and all three of the sexual assault on a child by one in a position of trust charges. 2. Analysis ¶ 46 Sexual assault on a child by one in a position of trust is a class 4 felony, but it becomes a class 3 felony if the prosecution proves, and the jury finds, that the victim was less than fifteen years old. § 18-3-405.3(1)-(3), C.R.S. 2021. ¶ 47 Miranda contends that because the jury instructions for the sexual assault on a child by one in a position of trust charges didn’t require the jury to find that the victim was less than fifteen, he can only suffer convictions for the class 4 felony version of the offense, rather than the class 3 felony convictions that were entered. ¶ 48 Miranda relies on Medina v. People, 163 P.3d 1136, 1140 (Colo. 2007), to support his argument on appeal. We aren’t persuaded that Medina controls the outcome here. ¶ 49 In Medina, the defendant was charged with accessory for unlawfully assisting the escape of one who had committed first or second degree murder, a class 4 felony. Medina, 163 P.3d at 1136. One of the elements of the class 4 felony version of that offense is knowingly rendering assistance to someone who had committed first 
21 or second degree murder. Id. at 1139. The jury instructions at trial, however, only required that the jury find that the defendant knowingly rendered assistance to someone who was suspected of first degree or second degree murder. Id. Although the jury returned a verdict for the class 5 felony version of the offense, the trial court entered a conviction for the class 4 felony version of the offense. Id. Our supreme court reversed, concluding it was structural error to enter the class 4 felony conviction when the jury verdicts only supported the class 5 felony conviction. Id. at 1140. ¶ 50 There is a critical distinction between this case and Medina. Here, unlike in Medina, we do have a jury finding on the supposedly missing element. Specifically, the elemental instructions for the sexual assault on a child charges (couch incident, bedroom incident, and living room incident) contained the element that the child was under the age of fifteen. ¶ 51 Put another way, there were three incidents — couch, bedroom, and living room. For each incident, there were two charges — sexual assault on a child and sexual assault on a child by one in a position of trust. For each incident, the jury found beyond a reasonable doubt that Miranda had committed sexual 
22 assault on a child and that the child was less than fifteen at the time of each event. So, there is a corresponding jury finding that the victim was under fifteen at the time of each of the three incidents, and therefore no structural error because Miranda (unlike the defendant in Medina) wasn’t deprived of a jury finding on the supposedly missing element. ¶ 52 Unlike Medina, where the jury rendered no finding of an element required for a more serious conviction, here, the under fifteen element was proved to and found by the jury beyond a reasonable doubt, albeit in its verdict on another charge. See People v. Hoggard, 2017 COA 88, ¶ 52 (looking to other portions of the jury’s verdicts that were untainted by the identified error to conclude that the instructional error did not contribute to the conviction), aff’d on other grounds, 2020 CO 54. Therefore, the error was harmless beyond a reasonable doubt. E. Correction of the Mittimus ¶ 53 Lastly, we address the correction of the mittimus. Miranda argues that this court should remand for correction of the mittimus for two reasons. First, to vacate count 7, because it’s the same crime as count 1, and, second, to reflect a controlling mandatory 
23 parole period of twenty years to life because the mittimus currently doesn’t specify the length of the parole term for each prison sentence, merely stating that the “parole period is discretionary.” The Attorney General concedes, and we agree, that remand for correction of the mittimus is required. ¶ 54 Miranda was charged with seven counts based on three incidents, but the jury was only provided with six verdict forms. The jury returned six guilty verdicts. Count 1 on the mittimus is the same as count 7, except that count 1 reflects the sentence enhancer found by the jury. Therefore, the mittimus must be modified to reflect this. ¶ 55 We also agree that the mandatory parole period statutorily required as part of the sentence should be reflected on the mittimus. See Crim. P. 36; Craig v. People, 986 P.2d 951, 966 (Colo. 1999) (trial court’s failure to specify the term of defendant’s mandatory parole in mittimus was error, capable of and requiring correction by the sentencing court). The mittimus must be corrected to reflect the statutory parole period of twenty years to life. 
24 ¶ 56 In addition to Miranda’s contentions, the Attorney General argues that the mittimus must also be amended to correct the trial court’s improper merger of certain counts (and that the mittimus as prepared by the court didn’t accurately reflect the concurrent sentences that it intended to impose). The Attorney General bases this argument on the court’s use of the word “merge” on the mittimus. Specifically, the mittimus says:  “C[OUN]T 2 MERGES INTO C[OUN]T 1 FOR SENTENCING”;  “C[OUN]T 5 MERGES INTO C[OUN]T 3 FOR SENTENCING”;  “C[OUN]T 6 MERGES INTO C[OUN]T 4 FOR SENTENCING”; and  “C[OUN]T 7 MERGES INTO C[OUN]T 1 FOR SENTENCING.” Miranda argues that the use of the word “merge” simply indicates which sentences run concurrently, not which convictions merged together, so no correction is required. ¶ 57 We, however, don’t know what the trial court meant when it used the word “merge” on the mittimus. If it’s as Miranda 
25 contends, then the mittimus should be corrected to say as much. In any event, the mittimus must be corrected to accurately reflect the convictions it entered and sentences it imposed, including clarifying which sentences run concurrently to one another. ¶ 58 For the reasons stated above, we remand only for correction of the mittimus to (1) vacate count 7, because it is the same crime as count 1, (2) reflect a controlling mandatory parole period of twenty years to life, and (3) remove the use of the word “merge” and clarify which sentences run concurrently to one another. III. Conclusion ¶ 59 We affirm the judgment of conviction and remand only for the correction of the mittimus. JUDGE DUNN and JUDGE YUN concur.