**The PEOPLE of the State of Colorado, Petitioner**

v.

**James MacLEOD, Respondent.**

No. 06SC705.

Supreme Court of Colorado,
En Banc.

Feb. 4, 2008.

Carol Chambers, District Attorney, Paul R. Wolff, Chief Deputy District Attorney, Bryan Garrett, Deputy District Attorney, Centennial, Colorado, Attorneys for Petitioner.

Springer and Steinberg, P.C., Harvey A. Steinberg, Michael P. Zwiebel, Denver, Colorado, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

At issue here is whether the rape shield statute, section 18–3–407, C.R.S. (2007), and its procedural requirements apply when evidence of a witness's sexual history is not being offered for the truth of the matter asserted. In this prosecution appeal of a question of law, as permitted by section 16–12–102(1), C.R.S. (2007), the People argue that the rape shield statute applies regardless of the proponent's purpose for introducing the evidence. The People request that we disapprove the court of appeals' decision in this case, *People v. MacLeod*, 155 P.3d 494 (Colo.App.2006), which upheld the trial court's ruling that evidence of a witness's sexual history not being offered for the truth of the matter asserted was not covered by the rape shield statute. We agree with the People's argument, and therefore disapprove the court of appeals' ruling.

We hold that the rape shield statute applies to evidence of a victim's or witness's[1] prior or subsequent sexual conduct, reputation or opinion evidence about that witness's sexual conduct, or evidence that a witness has a history of false reporting of sexual assaults,[2] no matter the purpose for which the proponent intends to introduce the evidence at trial. The statute includes no "purpose" exception, and we will not read one into this detailed statute. Moreover, our interpretation furthers the legislature's stated

policy goal for enacting the statute: to prevent witnesses in sexual assault cases[3] from having to endure at trial needless, irrelevant, immaterial, or repeated public explorations of their sexual backgrounds as the price for testifying in sexual assault cases.

## II. Facts and Procedural History

MacLeod was accused of sexually assaulting his daughter multiple times. Only two counts, sexual assault on a child and sexual assault on a child by one in a position of trust, went to the jury, and he was found not guilty of both charges.

The basis for this prosecution appeal is the defense's cross-examination of a prosecution witness, W.H., who is MacLeod's ex-wife and the victim's mother, about her history of sexual abuse as a child. The trial court permitted the cross-examination to occur without requiring the defense to comply with the offer-of-proof and other procedural requirements in Colorado's rape shield statute, section 18–3–407. W.H. was cross-examined about her sexual history at two public proceedings, a pretrial motions hearing and the trial, although the rape shield statute permits such public testimony to occur only at trial.

Colorado's rape shield statute begins with the presumption that evidence of a witness's sexual history is irrelevant. § 18–3–407(1). To overcome that presumption of irrelevance,[4] the proponent must make a successful offer of proof, convincing the trial court that the otherwise irrelevant evidence of the

---

1. For the sake of clarity, and because section 18–3–407 applies with equal measure to both groups, we will refer to "victims and witnesses" collectively as "witnesses." *See* § 18–3–407(1), (1)(a), (2), (2)(a).

2. For the sake of clarity, and because the offer-of-proof procedures in section 18–3–407 cover all three categories of evidence equally, we will refer to "specific instances of ... prior or subsequent sexual conduct, reputation or opinion evidence about that sexual conduct, and evidence of a history of false reporting of sexual assaults" collectively as "sexual history." *See* § 18–3–407(1), (2), (2)(a).

3. As we did in *In re People v. Bryant*, 94 P.3d 624, 629 n. 3 (Colo.2004), in this opinion, we use the term "sexual assault" to describe all the sexual crimes of violence, whether committed on

children or adults, which are covered by section 18–3–407's procedural protections. *See* § 18–3–407(2) (stating that the rape shield statute's protections apply to criminal prosecutions under sections 18–3–306(3), C.R.S. (2007); 18–3–402 to –405.5, C.R.S. (2007); 18–6–301 and –302, C.R.S. (2007); and 18–6–403 and –404, C.R.S. (2007), as well as an attempt or a conspiracy to commit any of the crimes defined in the above statutes).

4. There are also two substantive exceptions to section 18–3–407's presumption of irrelevance: one for physical evidence of the witness's specific sexual activity to prove that the acts charged were not committed by the defendant; another for evidence of the witness's prior or subsequent sexual conduct with the defendant. *See* § 18–3–407(1)(a)–(b). Neither exception is at issue in this case.

witness's sexual history is relevant and material to the present case. § 18–3–407(2)(a), (e). This offer of proof must be made at least thirty days before trial. § 18–3–407(2)(a). If the court finds the offer to be sufficient and the prosecution does not stipulate to the facts, the court conducts a pretrial evidentiary hearing, in camera, at which the witness can be questioned about the proffered evidence. § 18–3–407(2)(c)–(d). Only if the evidence is deemed relevant to a material issue will the court allow the evidence to be introduced at trial with directions prescribing "the nature of the evidence or questions to be permitted." *See* § 18–3–407(2)(e). The approved sexual history evidence can only be admitted at trial, and remains inadmissible at any other pretrial proceeding. § 18–3–407(1), (2)(e). Regardless of whether the proffered evidence is accepted, the transcript from the in camera hearing is to be sealed and is admissible at trial only for the limited purpose of impeachment. § 18–3–407(2)(g); *In re People v. Bryant*, 94 P.3d 624, 631 (Colo. 2004).

In this case, the evidence implicating rape shield concerns arose at two separate public proceedings. The first time was at a pretrial motions hearing in December 2004, held to determine if the prosecution could introduce child hearsay statements made by the victim. During that hearing, W.H., the victim's mother, testified. On cross-examination, the defense asked W.H. if she herself had ever been sexually abused, and if so, had she ever told the victim about these experiences.[5] W.H. stated that she had been molested as a child, and that she had told her daughter this. In response to questions about whether she had told her daughter about her own molestation before her daughter reported the abuse by her father, W.H. stated, "I don't think I ever hid the fact that I had been molested from my daughter because I wanted her not to be put in the same position that I was." She also testified that she warned

her daughter that she had made "very bad decisions" in not telling anyone about the molestation at the time it occurred.

The defense did not file a rape shield offer-of-proof motion before the December 2004 motions hearing, or between that hearing and the June 2005 trial, even though five additional hearings took place in the interim. Further, the prosecution did not object to the introduction of this testimony at the motions hearing and the trial court did not consider or rule on the question of whether this testimony implicated the rape shield statute.

During the defense's opening statement at the trial, the defense counsel told the jury that sexual abuse was "a touchy subject" for the victim's mother because W.H. herself had been abused. When the prosecution objected, citing the rape shield statute, the trial court overruled the objection. Before the defense began to cross-examine the victim, the prosecution again objected to any questions concerning the mother's prior molestation that "may come up on cross-examination" of the victim, arguing that the defendant had never filed a rape shield offer of proof. Counsel for MacLeod countered that the rape shield statute did not apply because he was "not going into the child's sexual history." Furthermore, he asserted that he only intended to ask the mother if she had told her daughter that she had been sexually assaulted and if she had told her daughter not to make the same mistake she did by not reporting the abuse. The defense attorney explained that his intent was to show that the daughter knew that sexual abuse was, in his words, a "hot point," "hot button," "special button," and "touchy subject" for her mother, and therefore the daughter accused her father of sexual abuse knowing that the accusation would ensure that she could then stay permanently with her mother.[6] Therefore, MacLeod argued, the evidence of W.H.'s own abuse went to the victim's motive and bias, an area not within the purpose

---

5. The deputy district attorney present at the hearing did not object to the defense's questioning of W.H.

6. After her parents' divorce several years earlier, the victim lived with her father MacLeod, primarily in Colorado, and only infrequently visited her mother, who lived out of state. However,

the victim had a falling out with her father after he remarried, and so was sent to live temporarily with her mother in California. It was at this point that the victim told W.H. that MacLeod had sexually abused her, and stated her desire to stay permanently with W.H.

and spirit of the rape shield statute's protections.

The trial court agreed with MacLeod, ruling:

> [T]he case law also says that the purpose [of the rape shield statute] is to prevent protection [sic] from humiliating and embarrassing public fishing expeditions into past sexual conduct. The Court agrees with [MacLeod] that in this case it doesn't even matter whether it occurred. The only issue is whether the daughter was told it occurred[,] whether the daughter was encouraged to report and had that knowledge and that is very relevant to this case and the Court will allow it.

The defense then cross-examined the victim, who testified that her mother had told her about being molested as a child but not until after the victim had reported the abuse by her father. The prosecution then called W.H. and on direct examination asked her if she had been sexually molested as a child and, if so, whether she had told her daughter. W.H. answered that she had been molested and that she told her daughter about it after her daughter said she had been abused by MacLeod. The defense challenged this statement as inconsistent with her testimony at the pretrial motions hearing. On cross-examination, W.H. apologized and said she was "stunned" that her abuse had come up at the motions hearing because the deputy district attorney handling the motions hearing had assured her that her own molestation would not be brought up in the trial concerning her daughter's abuse. Although no specifics of W.H.'s molestation were discussed, defense counsel extensively questioned the mother's uncertainty as to when she had told her daughter about the molestation.

On redirect, the prosecution asked W.H. about the impact that the other deputy district attorney's promise had made on her. W.H. said it had made her feel "grateful" that she would not be asked about her own past, as "I did never given [sic] details as to everything that happened with my stepfather." She said she had no prior warning that her own abuse would come up before she was questioned at the motions hearing. She testified that the surprise questioning made her feel "embarrassed" and "humiliated," and that testifying about the event before the jury, again with no prior warning that it would happen, brought out the same feelings in her.

The jury ultimately acquitted MacLeod of the remaining sexual assault charges. The People sought appellate review, as a matter of law, of the trial court's ruling that the rape shield statute did not apply to this evidence of a witness's prior sexual abuse. The court of appeals upheld the trial court's ruling that the rape shield statute did not apply because the evidence of W.H.'s molestation was not being offered for the truth of the matter asserted. *MacLeod,* 155 P.3d at 496–98. The People again appealed, challenging the trial court's and the court of appeals' interpretation of the scope of the rape shield statute.

### III.  Analysis of the Rape Shield Statute, Section 18–3–407

The only issue in this prosecution appeal is the application of the rape shield statute to questioning a witness about her sexual history when the inquiry concerns evidence that will not be admitted for the truth of the matter asserted. MacLeod, echoing the court of appeals, contends that the rape shield statute only covers evidence offered for the truth of the matter asserted because only then is the court concerned about whether the event at issue actually happened. In reading this "purpose" exception into section 18–3–407, MacLeod offers no statutory language to support his position.

We reject MacLeod's argument. Based on the statutory language and the rape shield statute's strongly stated policy of protecting witnesses from irrelevant, immaterial or repeated public examination as the price for testifying in sexual assault cases, we hold that the rape shield statute applies no matter the purpose for which the proponent is offering the evidence of a witness's sexual history. There is no exception to the statute if the proffered evidence is not being offered for the truth of the matter asserted.

We begin by examining the background of section 18–3–407. We then examine the stat-

ute's language and find there is no "purpose" restriction in this clear and detailed statute. We next consider the weighty policy reasons for the statute that would be substantially undercut by MacLeod's reading of the statute, as well as the logical inconsistency of his argument from an evidentiary law perspective. We finally confirm that our interpretation comports with our previous broad readings of the rape shield statute.

## A. Background to and Purpose of Section 18–3–407

■ The purpose of the rape shield statute has been well detailed by this court over the last thirty years. At common law, a sexual assault witness's sexual history was admissible to undermine the witness's credibility. *See People v. McKenna*, 196 Colo. 367, 371, 585 P.2d 275, 277 (1978). In a typical sexual assault case where the defendant claimed that the victim consented, evidence that the victim had had sexual relations with another was admissible. *Bryant*, 94 P.3d at 629; *McKenna*, 196 Colo. at 371, 585 P.2d at 277. The relevance rationale was that the victim, having consented to sexual relations in the past, was more likely to have consented in the case at issue. *Bryant*, 94 P.3d at 629; *McKenna*, 196 Colo. at 371, 585 P.2d at 277. Cross-examination of the witness then often became a probing examination of one's sexual history, even when completely unrelated to the case at hand. *McKenna*, 196 Colo. at 371, 585 P.2d at 277–78. As a result, the witness, instead of the defendant, was effectively—and needlessly—put on trial. *See id.*

The ramifications of allowing this examination of the witness's sexual history were significant. Sexual assaults are "among the most intimate and personally-devastating invasions a person may experience in his or her lifetime[,] . . . typically produc[ing] emotionally-destructive reverberations for the victim and the victim's family long after [their] occurrence." *Bryant*, 94 P.3d at 629 (footnote omitted). Victims and witnesses, frequently the victim's parents, relatives or close friends, must testify if charges are to be proven beyond a reasonable doubt. *See id.* at 630. For many witnesses, the initial trauma of the event, combined with the likely prospect of having their sexual histories scrutinized in open court, discouraged them from coming forward to press charges. *See id.; McKenna*, 196 Colo. at 372, 585 P.2d at 278. The result was abysmally low rates of prosecutions and convictions for sexual assault. *See Bryant*, 94 P.3d at 630; *McKenna*, 196 Colo. at 372, 585 P.2d at 278.

The rape shield statute was passed in the 1970s when the General Assembly, as part of a national trend, changed the common law understanding of sexual assault as a crime of passion and recognized it as a hostile crime of violence and domination. *McKenna*, 196 Colo. at 372, 585 P.2d at 278. The statute reflected a pronounced policy shift away from permitting inquisitions of witnesses in sexual assault cases, and toward greater procedural protection for those witnesses to encourage them to come forward and confront defendants in sexual assault cases. *Id.* Thus, as we explained in *McKenna* when we first reviewed section 18–3–407:

> The basic purpose of section 18–3–407, therefore, is one of Public policy: to provide rape and sexual assault victims greater protection from humiliating and embarrassing public "fishing expeditions" into their past sexual conduct, without a preliminary showing that evidence thus elicited will be relevant to some issue in the pending case. The statute represents one means chosen by the general assembly to overcome the reluctance of victims of sex crimes to report them for prosecution. Thus it reflects a major public policy decision by the general assembly regarding sexual assault cases. In effect the legislature has declared the state's policy to be that victims of sexual assaults should not be subjected to psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders.

*Id.* at 371–72, 585 P.2d at 278.

This special statutory procedure is a constitutionally upheld mix of the legislature's substantive power and this court's procedural rulemaking authority. *People v. Weiss*, 133 P.3d 1180, 1185 (Colo.2006); *McKenna*, 196 Colo. at 372–73, 585 P.2d at 278–79. It marked a significant change in how Colorado

courts analyzed evidence of a witness's sexual history. Generally, the rules of evidence favor admissibility. *People v. Melillo*, 25 P.3d 769, 773 (Colo.2001). However, the statute reflects the General Assembly's intent to make a substantive change in the law by declaring evidence of a witness's sexual history presumptively irrelevant, and creating the offer-of-proof procedure that must be followed in order to rebut the presumption and to introduce evidence of a witness's sexual history at trial. *See Weiss*, 133 P.3d at 1185; *In re K.N.*, 977 P.2d 868, 872 (Colo. 1999). Not only does the act require the proponent of such evidence to prove the relevance and materiality of the sexual history evidence before trial, but it also limits the public exposure of the witness. Public examination of the witness about the witness's sexual history may occur only once, that is, at trial, because the pretrial hearing must be held in camera. *See* § 18–3–407(1) & (2)(c).

It is important to recognize that the statute does not preclude the admission of all sexual history evidence at trial. *See McKenna*, 196 Colo. at 374, 585 P.2d at 279. Such evidence, although embarrassing or humiliating to a testifying witness, may still be admissible. *See id.* However, the statute is intended to minimize and control the harmful effect of such evidence by requiring that the proponent of the evidence prove its relevancy and materiality through a specific in camera pretrial procedure before the evidence may be introduced at the public trial. *See Bryant*, 94 P.3d at 631. If the court determines that sexual history evidence may be presented at trial, it must prescribe the nature of the evidence that may be presented and the questions that may be posed. *See* § 18–3–407(2)(e).

The main goal of the statute, then, is to prevent needless, humiliating and embarrassing "fishing trips" that probe the witness's sexual history in public, when there has been no showing that the evidence is relevant and material to an issue in the case. Its secondary goal is to ensure that when a public examination of a witness's sexual history must occur, it occurs only once—at the trial—and the examination is limited to evidence or questions approved by the trial

court. Having examined the policy background to the rape shield statute, we next determine if the rape shield was meant to apply in the context of this case.

## B. Statutory Language

To begin with, subsection 18–3–407(2) includes the "specific instances of ... a witness's prior or subsequent sexual conduct" in its list of evidence that is presumed irrelevant unless an offer of proof is made. "Sexual conduct" has been construed by Colorado courts to include a prior sexual assault as a type of "involuntary" sexual conduct. *People v. Aldrich*, 849 P.2d 821, 824 (Colo.App.1992), *cert. denied*, (Colo.1993) (cited with approval by *Weiss*, 133 P.3d at 1185; *People v. Murphy*, 919 P.2d 191, 195 (Colo.1996)).

Subsection 407(1) also expressly states that after a successful offer of proof has been made, evidence of a witness's sexual history is "admissible *only* at trial and *shall not be admitted in any other proceeding* except" the in camera hearing. *See* § 18–3–407(1) (emphasis added). As a result, when the rape shield statute is applicable to the evidence in question, section 18–3–407 requires the court to specify the nature of the evidence to be presented and the questions to be asked, and bars the covered evidence from being admitted at any public proceeding other than the trial. Therefore, it could not be admitted at a pretrial motions hearing such as the one here where W.H. was first questioned about her own abuse.

█ The crux of the matter, then, is whether the statute applies if the evidence is not being offered for the truth of the matter asserted. We hold that it does.

The statute's language includes no "purpose" exception that would enable the statute's requirements to be avoided if the proponent were not offering the evidence for the truth of the matter asserted. Rather, the statute's broad, all-inclusive language states that evidence of a witness's sexual history "shall be presumed to be irrelevant" during "any criminal prosecution," except for a closed list of two substantive exceptions (neither of which is applicable in this case) and evidence admitted through the offer-of-proof

procedural exception. *See* § 18–3–407(1), (1)(a), (1)(b), (2), (2)(a). In section 18–3–407(2)(a), the statute lists every type of evidence that is presumptively irrelevant unless a proponent makes a successful offer of proof. The statute then sets forth a detailed procedure as to how the offer of proof must be made and prescribes how the trial court must conduct the hearing and handle the resulting testimony. *See* § 18–3–407(2)(a)–(g).

Nowhere in this lengthy, detailed statute is there any language limiting its applicability to only those instances where the evidence is offered for the truth of the matter asserted. Without any indication of a legislatively created "purpose" exception, reading one into the statute would contradict section 18–3–407, and would not give sensible effect to the General Assembly's intent in enacting this substantive rule of evidence.

Most troubling, however, is that MacLeod's proposed interpretation would effectively gut the rape shield statute. As this court held in *McKenna*, and has confirmed repeatedly since then, this statute was meant to protect a witness from the humiliation and embarrassment caused by having the witness's sexual history needlessly scrutinized in public, when that evidence has not been shown in an in camera hearing to be relevant and material to the case at hand. *See, e.g., Weiss*, 133 P.3d at 1185; *Bryant*, 94 P.3d at 629–30; *Melillo*, 25 P.3d at 776–77; *K.N.*, 977 P.2d at 874; *Murphy*, 919 P.2d at 194–95; *McKenna*, 196 Colo. at 371–72, 585 P.2d at 277–78. MacLeod's reading eliminates the statute's requirements that the evidence's relevancy and materiality be proven at an in camera hearing before the sexual history evidence can be admitted at trial and that the court control the manner in which evidence is presented. Under MacLeod's approach, evidence of a witness's sexual history would now be admitted without warning at a public hearing or trial, no matter how marginal the evidence's relevancy, materiality or veracity, provided that the proponent was not offering it as evidence of its truth. That result is certainly not consistent with the rape shield statute.

Furthermore, reading a "not for the truth of the matter asserted" exception into the rape shield statute conflicts with basic principles of the law of evidence. The rape shield statute is an extension of CRE 401 and 403, which are rules of relevancy. Evidentiary rules of relevancy are concerned with whether proposed evidence makes a fact of consequence more or less probable, and whether that probative value is outweighed by any unfair prejudice caused by the evidence. CRE 401, 403; *see Melillo*, 25 P.3d at 773–74 (discussing the interplay between CRE 401, CRE 403, and section 18–3–407).

On the other hand, the concept of evidence that is offered "not for the truth of the matter asserted" is part of the definition of evidence that is not hearsay. CRE 801(c) (defining hearsay as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). The reasoning behind the hearsay evidentiary rules differs from that of the relevancy evidentiary rules because "[t]he basis for the rule which excludes hearsay from evidence is the lack of opportunity to test, by cross-examination, the accuracy and truth of the statements offered." *Fernandez v. People*, 176 Colo. 346, 353, 490 P.2d 690, 693 (1971). As a result, it is illogical to engraft a hearsay exception, which is concerned with the opportunity to confront an adverse witness, onto a relevancy statute, which is focused on weighing evidence's probative value versus its prejudice. Moreover, arguing that a procedural rule of evidence trumps a legislatively enacted substantive rule of evidence is not a reasonable interpretation of the scope of section 18–3–407, a statute that was specifically enacted to change the common law's handling of sexual history evidence.

What occurred in this case underscores the importance of the procedural protections given by section 18–3–407 to the witnesses in sexual assault cases. Here, the defense did not file a rape shield motion or make an offer of proof that would have warned W.H. that she would be required to testify about her childhood abuse at the trial concerning her daughter's alleged abuse. Thus, the court did not conduct an in camera proceeding to

determine whether the purported evidence was relevant and material to the case. Nor did the court determine the nature of the evidence that could be presented or what questions could be asked of the witness.

The rape shield statute is intended to prevent the public humiliation and embarrassment of a witness, without any prior showing that the evidence was relevant or material to the case at hand. The premise of the statute is that a witness may be questioned about the witness's sexual history only when such examination is necessary, and even then the examination must occur under closely regulated circumstances. The procedural requirements of a pretrial motion and an in camera hearing must be satisfied before a witness can be compelled to answer questions in public about the witness's sexual history. Sexual assault trials would revert to the common law tactics if the rape shield could be avoided because the purpose for which the evidence was sought had so little relevance and materiality that the truth of the matter asserted did not matter.

We have consistently read this statute so that its procedural presumption of irrelevancy is broadly applied. For example, in *People v. Murphy*, we held that "sexual conduct" also includes one's sexual orientation, since the two are "closely related." 919 P.2d at 195. Indeed, our 2006 holding in *People v. Weiss* is completely at odds with MacLeod's proposed limitation on the rape shield statute's scope. In *Weiss*, we required a proponent seeking to make an offer of proof that a victim had a history of falsely reporting sexual assaults to prove that the accusations had been actually false, and not merely that the victim had previously made accusations that were not prosecuted. 133 P.3d at 1188.[7]

It is worth reiterating that our decisions in *Weiss* and *Murphy* broadly applying the rape shield statute do not lead to evidence of a witness's sexual history always being inadmissible at trial. Rather, the statute sets out

procedural requirements allowing the proponent to rebut the presumption of irrelevance of such evidence by showing its relevance and materiality in an in camera hearing. It would be irreconcilable for this court to require, as it did in *Weiss*, that false prior accusations be proven actually false in order to be possibly admitted through the offer-of-proof procedure, yet also follow MacLeod's proposed rule and, without requiring an offer of proof, admit any evidence of a witness's sexual history, including prior false accusations, no matter its accuracy, relevance or materiality, provided it is not being offered for the truth of the matter asserted.

We therefore disapprove the court's ruling during the trial allowing the defense to raise W.H.'s own sexual abuse on cross-examination even though the defense had not complied with the offer-of-proof requirements in subsection 18–3–407(2)(a) through (g). The defense's questioning of W.H. at the pretrial motions hearing about her prior sexual abuse was improper under section 18–3–407(1). Even if the trial court had required the defendant to make a successful offer-of-proof and the court had determined that the evidence would be admissible at trial, it could not be admitted at any other public hearing. As a result, we disapprove the court of appeals' decision upholding the trial court's ruling.

## IV. Conclusion

We hold that section 18–3–407 applies to evidence of a sexual assault witness's sexual history, even if the evidence is not offered for the truth of the matter asserted. Under the statute, the proponent of such evidence must comply with the offer-of-proof procedure and in camera hearing requirement to ensure the evidence is relevant and material before it can be admissible at trial. Further, the trial court may not allow the admission of such

---

7. *Accord People v. Kyle*, 111 P.3d 491, 496–97 (Colo.App.2004), *cert. denied*, (Colo.2005) (narrowly reading the physical evidence of sexual activity exception in subsection 18–3–407(1)(b), to ensure that it did not become a backdoor through which a proponent could inquire about a victim's sexual conduct without needing to follow the offer-of-proof procedure); *People v. Gholston*, 26 P.3d 1, 7–8 (Colo.App.2000), *cert. denied*, (Colo.2001) (reading the statute's "prior sexual conduct" language broadly to include sexual violence committed by the victim, not just sexual violence directed toward the victim).

evidence at any public hearing other than the trial.