2012 CO 20

**In re The PEOPLE of the State of Colorado, Plaintiff**

v.

**Yrineo SALAZAR, Defendant.**

**No. 11SA305.**

Supreme Court of Colorado, En Banc.

.March 19, 2012.

Rehearing Denied April 9, 2012.

**1068**

Kenneth R. Buck, District Attorney, Nineteenth Judicial District, Sadie Medrano, Deputy District Attorney, Greeley, Colorado, Attorneys for Plaintiff.

Douglas K. Wilson, Public Defender, Dana L. Menzel, Deputy Public Defender, Denver, Colorado, Attorneys for Defendant.

Justice BOATRIGHT delivered the Opinion of the Court.

¶ 1 In this original proceeding under C.A.R. 21, we consider the trial court's admissibility determination as to testimony regarding specific instances of a purported alternative suspect's prior sexual conduct, which the defendant sought to introduce to challenge the alleged victim's identification in a case alleging sexual assault on a child. The People petitioned for relief from the trial court's order finding the evidence admissible. We issued a rule to show cause. Because the trial court abused its discretion when it determined that the probative value of the alleged prior sexual conduct was not substantially outweighed by the danger of such evidence to confuse the issues and mislead the jury, we make the rule absolute and remand the case to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 2 The prosecution has charged Yrineo Salazar with sexual assault on a child, in violation of section 18–3–405(1), C.R.S (2011), and sexual assault on a child pattern of abuse, in violation of section 18–3–405(2)(d), C.R.S. (2011). The charges arise out of allegations by M.L., who was eight years old at the time, that the defendant sexually assaulted her when she stayed at her maternal grandparents' house. The defendant is M.L.'s uncle by marriage to M.L.'s maternal aunt, T.S. The defendant, T.S., and their children, were visiting from out-of-state and also staying at the grandparents' house.[1]

¶ 3 M.L. first disclosed sexual abuse to a Safe Touch educator at her school following a presentation that included "good touch/bad

---

1. In addition to M.L., who is a minor, we refer to the other non-parties in this case by their initials to protect their privacy and because their full names are not relevant to our resolution of the issue.

touch" scenarios. Using age appropriate language, she told the educator that someone had touched her vagina under her underwear. She said she did not tell anyone because it was her "mom's brother" and she was afraid she would never see that part of the family again.

¶ 4 After school that day, M.L. described several incidents to her mother. The mother recounted that M.L. told her that "T. Junior" (the defendant) had touched her. M.L. said she did not tell anyone because it was "T. Junior" and she did not want anyone, including her aunt, to be mad at her or not believe her. M.L. told her mother that she was sleeping in the living room at her grandparents' house with her cousin. They had left the television on. She said she felt something weird and she opened her eyes a little; she could see a figure, but could not see his face clearly. She did see a grey shirt and red shorts. M.L. told her mother that "T. Junior" touched her "in her middle parts" with his fingers and he also touched her "butt." She knew it was the defendant because he was the only tall man in the house. M.L. also stated that he did this on two occasions, and almost on a third; on the third occasion, a baby in the house started crying and M.L. woke up and saw the defendant sitting in a chair in the living room. M.L. indicated that she clearly saw the defendant on at least one occasion but the mother's account is inconsistent as to whether M.L. saw the defendant on the second occasion when she woke up to someone touching her, or on the third occasion when the baby woke her up.

¶ 5 According to M.L.'s mother, M.L. wears prescription glasses for distance but ordinarily does not wear them while she sleeps. M.L.'s mother did not know if M.L. was wearing her glasses on the nights of the alleged incidents. The mother indicated that, around this time, M.L. was spending two or three nights a week at her grandparents' house so that they could take her to school in the morning.

¶ 6 M.L. also underwent a forensic interview. In this interview she described three incidents. With regard to the first incident, M.L. stated that she had been watching television when she fell asleep on the air mattress in her maternal grandparents' living room. She described being digitally anally and vaginally penetrated. She described the assailant's clothing as a grey shirt and red shorts. M.L. stated that she was informed by her grandmother that the defendant had turned the television off because the grandmother went into the living room and it was off. M.L. did not know how the grandmother knew it was the defendant who turned the television off.

¶ 7 As to the second incident, M.L. described a different night when she was vaginally penetrated but not anally penetrated. She stated that she saw the defendant's face clearly. M.L. also described a third incident on yet a different night when someone attempted to remove her shorts. She was not touched but awoke to find the defendant sitting in a chair in the living room.

¶ 8 Prior to trial, the defendant filed a motion to pierce the rape shield statute and noticed his intent to introduce evidence regarding specific instances of a witness's prior sexual conduct. In his motion, the defendant asserted that A.G., M.L.'s maternal grandfather, had sexually abused his daughter, M.L.'s aunt T.S., in a similar fashion from the ages of approximately four to nine years old. The defendant further claimed that A.G. was present in the house at the time of the incidents and is similar in appearance to the defendant. The defendant argued that the evidence was relevant because A.G. had committed similar offenses, had both motive and opportunity to commit the offense in this case, and identity was an issue.

¶ 9 The trial court held a hearing at which T.S. testified to sexual abuse she allegedly suffered as a child. She stated that she was subjected to anal and vaginal intercourse and digital vaginal penetration. T.S. did not recall digital anal penetration. She identified A.G. as the perpetrator. T.S. indicated that when she was sixteen she told her mother about the abuse and confronted her father. There is no evidence that charges were ever brought against A.G. At the conclusion of the hearing, the court found T.S. to be credible. The court identified two issues in the defendant's motion: (1) whether the defendant

would be permitted to introduce evidence of an alternate suspect, namely A.G.; and (2) whether evidence of A.G.'s alleged prior sexual conduct would be admissible pursuant to the rape shield statute, section 18–3–407, C.R.S. (2011). The trial court ruled that the evidence was admissible.

¶ 10 Although M.L. identified the defendant as the perpetrator, the trial court determined that the perpetrator's identity was at issue because, based on the totality of the circumstances, the jury could infer that M.L. misidentified the defendant. In its ruling, the court noted the following circumstances relating to M.L.'s identification: (1) inconsistencies between M.L.'s disclosures to her mother and during the forensic interview; (2) that M.L. was not wearing her glasses during the incidents; (3) that it was dark except for limited ambient light; (4) that M.L. initially disclosed observing only a grey shirt and later disclosed observing red shorts; (5) that the defendant intended to introduce evidence that he was not wearing a grey shirt on the night of the allegations, but rather was wearing a black shirt; (6) that the maternal grandmother told M.L. that the defendant turned off the television, inferentially influencing M.L.'s ability to accurately recall; (7) that M.L. was inconsistent regarding her ability to observe the defendant during the first incident; and (8) that M.L. was inconsistent with regard to where and when she observed the defendant sitting in a chair. Based on these circumstances, the court concluded that the jury could infer that M.L. misidentified the defendant in the first incident and such misidentification could create a reasonable doubt as to the identity of the perpetrator in the second incident. Moreover, even if misidentification of the perpetrator could only be inferred as to the first incident, that misidentification could affect the pattern of abuse charge. The court ruled that evidence of A.G.'s alleged prior sexual conduct was relevant, not only because it could touch upon A.G.'s motive and opportunity to commit the charged offense, but also because the totality of the circumstances created an issue of identity in the case.

¶ 11 The trial court then considered whether evidence of A.G.'s uncharged acts was admissible under the rape shield statute, section 18–3–407. It noted that evidence of a witness's sexual conduct is presumptively irrelevant, but identified three circumstances in which such evidence is admissible. The court listed these in its order:

1. The court may admit evidence of the victim's sexual contact with the defendant. § 18–3–407(1)(a).

2. The court may admit evidence of specific instances of sexual activity to prove that the acts charged were not committed by the defendant. § 18–3–407(1)(b); *People v. MacLeod,* 176 P.3d 75, 76 (Colo.2008).

3. Upon a sufficient offer of proof, the court may admit certain evidence (including specific instances of sexual conduct . . .), if that evidence is relevant to a material issue. § 18–3–407(2) and *MacLeod,* 176 P.3d at 76–77.

The court acknowledged that, even if the evidence falls within one of these exceptions, it still must be excluded pursuant to CRE 403 if its probative value is outweighed by the danger of unfair prejudice or confusion of the issues.

¶ 12 The trial court ruled that evidence of A.G.'s alleged prior sexual conduct was admissible under both the second and third exceptions to the rape shield statute's presumption of irrelevance because it constituted circumstantial evidence that the offenses against M.L. were committed by someone other than the defendant and was relevant to the material issue of identity. The court stated that there would be a level of confusion as to whether A.G. did, in fact, commit sexual assault against T.S., and as to whether evidence of A.G.'s prior acts against T.S. would be probative of identity in this case. Nevertheless, given the circumstantial identification, the court determined that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice or confusion of the issues. Hence, the trial court granted the defendant's motion to introduce evidence of an alternate suspect, including specific instances of A.G.'s alleged prior sexual conduct. The People petitioned for relief under C.A.R. 21 and, after consideration of the issue, we reverse.

## II. Jurisdiction

¶ 13 We may exercise our original jurisdiction under C.A.R. 21 to review an abuse of discretion where the remedy on appeal would not be adequate. C.A.R. 21(a)(1); *People v. Null*, 233 P.3d 670, 675 (Colo.2010). Here, the People cannot seek an interlocutory appeal of the trial court's admissibility determination. *See* C.A.R. 4.1(a). However, if the evidence is improperly admitted, there may not be a remedy on appeal. *See Null*, 233 P.3d at 675 (noting potential double jeopardy implications if evidence is wrongly excluded from trial). Under these circumstances, we conclude that it is appropriate to exercise our original jurisdiction. We review a trial court's relevancy determinations for an abuse of discretion, which occurs when the trial court's decision is manifestly arbitrary, unreasonable, or unfair. *People v. Harris*, 43 P.3d 221, 225 (Colo.2002).

## III. Analysis

¶ 14 This case involves the intersection of competing evidentiary considerations: a defendant's right to present a complete defense, including relevant evidence of an alternate suspect; the use of prior transaction evidence similar to that contemplated by CRE 404(b) for defensive purposes; the presumption of irrelevance with regard to a witness's prior sexual conduct under Colorado's rape shield statute; and general evidentiary principles of relevancy and probativeness. The defendant seeks to introduce evidence of A.G.'s alleged prior sexual conduct involving T.S., which is presumed irrelevant under the rape shield statute, on grounds that M.L. misidentified him. The defendant contends that he and A.G. are similar in appearance and that A.G.'s prior sexual conduct and presence in the house suggest motive and opportunity to commit the offense in this case.

¶ 15 Identity is thus an issue. It is an element of the charged offenses that the prosecution must prove, and the defendant denies that he committed the acts charged. We must, therefore, determine whether the defendant's proffered identity evidence is admissible. We have not written on the precise question of whether an alternative suspect's prior sexual conduct with someone other than the victim might be relevant to the identity of the perpetrator of the charged offense and, therefore, both admissible as alternative suspect evidence and not barred by the rape shield statute. We begin by reviewing the evidentiary principles applicable to this question.

¶ 16 Unless otherwise provided by constitution, statute, or rule, all relevant evidence is admissible. *Yusem v. People*, 210 P.3d 458, 463 (Colo.2009). Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403. These principles generally guide all of a trial court's evidentiary rulings. *See People v. Melillo*, 25 P.3d 769, 774 n. 3 (Colo.2001) (discussing interplay between CRE 401, CRE 403, and the rape shield statute).

¶ 17 Considerations of relevancy and probativeness affect even a criminal defendant's constitutional right to present a defense. The Constitution guarantees a criminal defendant a meaningful opportunity to present a complete defense. *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006); *Krutsinger v. People*, 219 P.3d 1054, 1061 (Colo.2009). Consistent with this right, a defendant may present evidence that another person might have committed the charged offense. *See Holmes*, 547 U.S. at 325–27, 126 S.Ct. 1727; *People v. Flowers*, 644 P.2d 916 (Colo.1982). However, the right to present a defense is not absolute; the Constitution requires only that the accused be permitted to introduce all relevant and admissible evidence. *Harris*, 43 P.3d at 227. Thus, a trial court may exclude evidence of an alternative suspect, "which has only the most minimal probative value, and which requires a jury to engage in

undue speculation as to the probative value of that evidence." *People v. Welsh,* 80 P.3d 296, 307 (Colo.2003); *see also People ex rel. R.L.,* 660 P.2d 26, 28 (Colo.App.1983) (noting that evidence must create more than an unsupported inference or possible ground for suspicion).

¶ 18 A defendant may seek to introduce evidence of other similar offenses, arguing that someone else is responsible for those offenses, and, therefore, more likely to be the person responsible for the offense charged against the defendant. CRE 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Subject to very narrow exceptions, evidence of prior similar acts when offered by the prosecution is inadmissible as proof of the accused's guilt with respect to the crime charged. CRE 404(b); *see also Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959), superseded by rule of evidence, CRE 404(b). This is due to the "inherent tendency [of similar transaction evidence] to prejudice the jury against the defendant and to induce it to find him guilty on the basis of his past activities rather than on [evidence of] the present charge." *People v. Bueno,* 626 P.2d 1167, 1169 (Colo.App.1981) (citing *Stull,* 140 Colo. 278, 344 P.2d 455). However, concerns regarding unfair prejudice to the defendant are inapplicable when the defendant himself offers similar transaction evidence for defensive purposes. *See Flowers,* 644 P.2d 916, 919 (Colo.1982). Accordingly, the admissibility of similar transaction evidence offered by the defendant is decided on a cases-by-case basis, according to general relevancy considerations. *Id.*

¶ 19 In addition to these general limits on a criminal defendant's ability to present evidence of an alternate suspect, Colorado's rape shield statute, which addresses evidence of the sexual conduct of a witness, comes into play given the alternative suspect evidence the defendant seeks to introduce in this case.[2] Under the rape shield statute, evidence of the prior or subsequent sexual conduct of a witness is presumptively irrelevant and therefore inadmissible. § 18-3-407(1); *People ex rel. K.N.,* 977 P.2d 868, 872 (Colo. 1999). There are two explicit statutory exceptions to this presumption: (1) evidence of the witness's prior or subsequent sexual conduct with the accused pursuant to section 18-3-407(1)(a); and (2) evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or similar evidence pursuant to section 18-3-407(1)(b). In addition, a proponent of sexual conduct evidence that does not fall within one of these two exceptions may overcome the presumption of irrelevance and inadmissibility if, after following the procedures specified in section 18-3-407(2), the trial court finds that the evidence is relevant to a material issue in the case. § 18-3-407(2); *People v. Williamson,* 249 P.3d 801, 802 (Colo.2011). However, evidence that falls under any of these three statutory provisions is not automatically admissible: it remains subject to the usual rules of evidence, including CRE 403's mandate that a trial court balance the probative value of evidence offered against the possibility of unfair prejudice, confusion of the issues, and potential to mislead the jury. *Harris,* 43 P.3d at 225–26; *see also Melillo,* 25 P.3d at 774, n. 3 (noting that an admissibility determination of any relevant evidence, "whether relevant under the rape shield statute or otherwise, necessarily involves an examination under CRE 403").

¶ 20 The two explicit statutory exceptions are not applicable to this case.[3] Under sec-

---

**2.** We note that the defendant intends to introduce evidence of A.G.'s alleged sexual conduct through T.S. Potentially, the prosecution would call A.G. to rebut T.S.'s testimony. Thus, the rape shield statute is implicated as to both T.S.'s testimony and A.G.'s likely rebuttal testimony.

**3.** The trial court found that evidence of A.G.'s prior uncharged sexual conduct fell within the second statutory exception and was relevant to a material issue in the case under § 18-3-407(2). The trial court misapplied the second statutory

exception, which allows evidence of specific instances of sexual activity to show "the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse," offered to prove that the acts charged were or were not committed by the defendant. This is a narrow statutory exception for evidence addressing physical aspects of the charged offense. *See People v. Villa,* 240 P.3d 343, 354 (Colo.App.2009). The trial court appears to have read the exception to apply to all evidence relevant to identity. The

tion 18–3–407(2), "the proponent must make a successful offer of proof, [and] convince[ ] the trial court that the otherwise irrelevant evidence of the witness's sexual history is relevant and material to the present case." *People v. MacLeod*, 176 P.3d 75, 76–77 (Colo. 2008); *see also* § 18–3–407(2). The trial court's relevancy determination under section 18–3–407(2) is based on the general relevance principle embodied in CRE 401. *See MacLeod*, 176 P.3d at 81 (noting that the rape shield statute "is an extension of CRE 401 and 403, which are rules of relevancy"); *People ex rel. K.N.*, 977 P.2d at 873 (defining relevance under section 18–3–407(2) in terms of CRE 401). The defendant seeks to introduce evidence of A.G.'s alleged prior sexual conduct to challenge M.L.'s identification. Hence, we must determine the relevance of the proffered evidence to the identity of the perpetrator in this case.

¶ 21 Although we have not previously directly addressed the precise combination of evidentiary issues raised by the evidence the defendant seeks to introduce in this case, several cases provide useful guidance. In *People v. Mulligan*, 193 Colo. 509, 568 P.2d 449 (1977), the defendant sought to introduce evidence that others had motive to commit the offense for which he was charged. We held that evidence of another person's motive or opportunity to commit an offense, "is not admissible without proof that such other person committed some act directly connecting him with the crime." *Id.* at 518, 568 P.2d at 456 (internal quotation and citation omitted); *see also People v. Perez*, 972 P.2d 1072, 1074–75 (Colo.App.1998) (holding that evidence of an alternative suspect, who was on probation for an unrelated misdemeanor sexual assault and living in the same house as the victim, was properly excluded without evidence of some act connecting the alternative suspect to the crime charged). In other words, motive and opportunity, alone, do not make such evidence relevant. The rule is premised on the need to place reasonable limits on collateral issues and to avoid encouraging the jury

to speculate. *See People ex rel. R.L.*, 660 P.2d at 28.

¶ 22 In *People v. Bueno*, 626 P.2d 1167 (Colo.App.1981), the court of appeals enunciated the current analysis applicable to similar transaction evidence offered by the defense. Although the defendant could not specifically identify an alternative suspect in the armed robbery for which he was charged, he sought to introduce evidence of a similar offense in the area on the following day from which the jury could infer an alternate suspect. *Id.* at 1169. Three eyewitnesses to the first robbery described the suspect as an "unshaven Spanish–American male, 5′6 to 5′7 in height with curly black hair, approximately 30 years of age, and missing his two front lower teeth." *Id.* at 1168. The offense was committed with a single-barrel, sawed-off shot-gun. *Id.* One eyewitness identified the defendant in a photographic array and again in a lineup. *Id.* at 1168–69. All three identified the defendant at trial. *Id.* at 1169. Eyewitnesses to the second robbery described the suspect as an "unshaven Spanish–American male, about 30 years old, C[sic] 8 tall, and missing two teeth in his lower jaw." *Id.* at 1168. The robbery was also committed with a single-barrel, sawed-off shot-gun. *Id.* Based on the similarity of the two offenses, the defendant argued that the same person probably committed both robberies. *Id.* at 1169. He sought to introduce testimony that an eyewitness to the second burglary had actually excluded the defendant from two separate lineups making it less probable that he had committed the first robbery. *Id.*

¶ 23 The court of appeals held that the admissibility of similar transaction evidence when offered by the defense must be decided on a case-by-case basis, according to general relevancy considerations. *Id.* at 1170. The court explained that "[i]f all the similar acts and circumstances, taken together, may support a finding that the same person was probably involved in both transactions, then evidence that the defendant did not commit the second transaction is relevant and admis-

---

exception is not so broad. Evidence of prior sexual conduct that may be relevant to identity but does not address the source or origin of semen, pregnancy, disease, or other similar phys-

ical aspects of the charged offense, would fall under section 18–3–407(2) and be subject to all the procedural protections that section entails.

sible." *Id.* Given the similarities in the description of the suspects, that both robbers used single-barrel sawed-off shot-guns, and that both robberies occurred in the same part of town on consecutive days, the court of appeals determined that evidence of the second robbery was relevant and admissible. *Id.*

¶ 24 In *People v. Flowers,* we adopted the court of appeals' more lenient general relevance standard for the admissibility of similar transaction' evidence offered by the defense but, based on the facts and circumstances of that case, found that the evidence was properly excluded by the trial court. 644 P.2d at 919–20. In *Flowers,* the defendant was charged with first degree sexual assault for an incident in which the perpetrator broke a window in the rear of a duplex, climbed the stairs to the victim's second-floor bedroom, threatened her with a knife, forced her to perform fellatio on him, and raped her. *Id.* at 917. The defendant sought to introduce evidence that nine victims of other sexual assaults in the area—which involved entry into a residence through a back window, threats of use of a knife or similar weapon, tying of the victims' hands, sexual assault including fellatio, and theft of money or credit cards—could not identify him as their assailant, and physical evidence excluded him as the assailant in one of those cases. *Id.* at 919. Like the defendant in *Bueno,* he argued that this evidence tended to prove that another person committed the other assaults and therefore was relevant to establish that the victim in his case misidentified him. *Id.* at 918. The People opposed the introduction of this evidence in part on grounds that the nine other crimes were dissimilar and that allowing evidence that the victims in those crimes had been unable to identify the defendant would turn his trial into a trial of the other nine cases. *Id.* at 919.

¶ 25 We agreed with the trial court's determination in *Flowers* that "the details of the other crimes were not distinctive or unusual enough to represent the 'signature' of a single individual, but were features common to most sexual assaults and merely would demonstrate that there was more than one person committing sexual assaults in the area." *Id.* at 920. Taken together, "[t]he similar acts and circumstances, [did] not support a finding that the same person probably was involved in all the cases, and therefore, the threshold standard for relevancy of such evidence was not met." *Id.* Moreover, even if the evidence was relevant, we found that testimony concerning the witness identification in nine other sexual assault cases would tend to confuse the issues in the case before the jury and unduly delay the trial. *Id.*

¶ 26 In this case, evidence of A.G.'s alleged prior sexual conduct with T.S. is of questionable relevance to the identity of the perpetrator against M.L. The argument for relevance is based on an inference of propensity combined with A.G.'s presence in the house on the nights of the alleged incidents. Neither factor, standing alone, is relevant. The acts and circumstances of A.G.'s prior alleged acts and the acts and circumstances of the assaults on M.L. are not distinctive or unusual enough to support a finding that the same person probably was involved in both cases. As in *Flowers,* A.G.'s alleged offenses against T.S. and the assaults against M.L. both involve conduct common to sexual assaults, rather than the signature of a single perpetrator. Likewise, evidence of opportunity, based on A.G.'s presence in the house, is also inadmissible, without some act connecting A.G. to the charged offense. *Mulligan,* 193 Colo. at 518, 568 P.2d at 456. The circular nature of the relevancy argument in this case is that the evidence offered to connect A.G. to the assault against M.L. requires an inference of propensity based on previous sexual acts with another person. Together, the combination of opportunity and propensity may establish, at best, a very tenuous relevancy connection. See *Perez,* 972 P.2d at 1074–75 (applying *Flowers* and upholding the exclusion of alternative suspect evidence that depended on a combination of opportunity and propensity because the acts and circumstances of the similar crime did not reveal a "signature" that would connect the alternative suspect to the crime charged).

¶ 27 Even assuming that evidence of A.G.'s alleged prior sexual conduct is relevant under section 18–3–407(2), it should have been

excluded under CRE 403. There is no evidence that T.S.'s allegations of abuse were ever reported to or investigated by law enforcement and no evidence that A.G. was ever charged criminally. The prosecution undoubtedly would seek to rebut allegations by T.S. that A.G. sexually abused her as a child, shifting the focus of the trial from the sexual assault against M.L. to A.G.'s alleged abuse of T.S. The danger of confusing the issues and misleading the jury substantially outweighs the minimal probative value, if any, of prior sexual conduct evidence to the identity of the perpetrator in this case.

¶ 28 The trial court considered that the circumstantial nature of M.L.'s identification of the perpetrator in the first incident strengthened the probative value of evidence of A.G.'s alleged prior sexual conduct, causing the probative value of the evidence to outweigh the danger of unfair prejudice or confusion of the issues. In doing so, the trial court placed too much weight on the circumstantial evidence of identification and underestimated the risk of confusion of the issues material to this case, i.e. whether the defendant committed the acts charged. Accordingly, we conclude that the trial court abused its discretion in granting the defendant's motion to introduce evidence of an alternative suspect's prior sexual conduct.

¶ 29 Nothing in our opinion should be read to preclude the defendant from otherwise seeking to challenge M.L.'s identification on other grounds, including credibility and reliability, with evidence regarding the similar appearance of men in the house, evidence that M.L. uses prescription glasses and may not have been wearing them during the alleged assaults, evidence that the lighting was limited, evidence of inconsistent statements, and evidence of any susceptibility of M.L. to misidentification.

## IV. Conclusion

¶ 30 Because the trial court abused its discretion in finding that the probative value of specific instances of the witness's prior sexual conduct was not substantially outweighed by the danger of such evidence to mislead the jury and confuse the issues, we make the rule absolute. We remand for further proceedings consistent with this opinion.

Chief Justice BENDER dissents.

CHIEF JUSTICE BENDER, dissenting.

¶ 31 The majority holds that the admission of evidence of an alternate suspect where identity of the perpetrator is an issue constitutes an abuse of discretion by the trial court because this evidence is minimally relevant and in any event would be confusing and misleading. Here, the defendant's wife sought to testify to the jury that her father, the grandfather of the victim, assaulted her when she was approximately the same age as the victim. I believe the defendant should be entitled to present such evidence to a jury as part of an accused's right to present a meaningful defense. When the appropriate standard of review is applied to the trial court's decision to admit this evidence-whether the trial court abused its discretion—the trial court's decision should be affirmed because this evidence is both relevant and the danger of confusion of the issues is minimal. Hence, I respectfully dissent.

### I.

¶ 32 The trial court's decision to admit the evidence of the alternate suspect's prior sexual assault of his daughter is reviewed for an abuse of discretion. See *People v. Quintana,* 882 P.2d 1366, 1371 (Colo.1994) ("[A]bsent an abuse of discretion the evidentiary rulings of a trial court will be affirmed."). A court abuses its discretion only if its decision is "manifestly arbitrary, unreasonable, or unfair." *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't,* 196 P.3d 892, 899 (Colo. 2008). "In assessing whether a trial court's decision is manifestly unreasonable, arbitrary, or unfair, we ask not whether we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options." *E-470 Pub. Highway Auth. v. Revenig,* 140 P.3d 227, 230–31 (Colo.App.2006). Accordingly, we do not look to see whether we agree with the trial court. *Streu v. City of Colorado Springs ex rel. Colorado Springs Utils.,* 239 P.3d 1264, 1268 (Colo.2010) (citing

*In re Bueno,* 248 B.R. 581, 582–83 (D.Colo. 2000)). Instead, our role is simply to review the trial court's decision to ensure that it did not "exceed[ ] the bounds of the rationally available choices." *Id.* (quoting *Big Sky Network Can., Ltd. v. Sichuan Provincial Gov't,* 533 F.3d 1183, 1186 (10th Cir.2008)).

## II.

¶ 33 The majority analyzes the proffered evidence under the Rape Shield Statute and concludes that the evidence of the grandfather's previous assault of his daughter establishes "at best, a very tenuous relevancy connection," and, even if relevant, the "danger of confusing the issues and misleading the jury substantially outweighs the minimal probative value, if any," of the evidence, and therefore the trial court abused its discretion by admitting the evidence. Maj. op. at ¶¶ 26, 27.

¶ 34 Proof of guilt of another has long been recognized as proper to present a complete and meaningful defense. *People v. Flowers,* 644 P.2d 916, 918 (Colo.1982). The test for admissibility of similar offense evidence of a third party is one of relevancy. *People v. Bueno,* 626 P.2d 1167, 1170 (Colo.App.1981); *see also Flowers,* 644 P.2d at 919. "If all of the similar facts and circumstances, taken together, may support a finding that the same person was probably involved in both transactions, then evidence that the defendant did not commit the second transaction is relevant and admissible." *Bueno,* 626 P.2d at 1170. Of course, the evidence is subject to the trial court's determination of relevancy. *See Holmes v. South Carolina,* 547 U.S. 319, 326, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006).

¶ 35 Materiality and probative value are the two components of relevant evidence. *Fletcher v. People,* 179 P.3d 969, 974 (Colo. 2007). To be material, the evidence must relate to a fact that is of consequence to the determination of the action. *Id.* To have probative value means there exists a tendency of the evidence to establish the proposition that it is offered to prove. *Id.* An item of evidence is but a single link in a chain of proof-therefore it need not conclusively prove the proposition for which it is offered. 1 George E. Dix et. al., *McCormick on Evi-*

*dence* 733 (Kenneth S. Brown, ed., 6th ed. 2006) (hereinafter "*McCormick* ").

¶ 36 These two concepts are codified in C.R.E. 401, which defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevancy is not an inherent characteristic of an item of evidence, but exists only as a relation between an item of evidence and a matter properly provable in the case. Fed.R.Evid. 401 advisory committee's note. Trial judges have broad discretion to determine whether evidence is relevant. *People v. Schwartz,* 678 P.2d 1000, 1009 (Colo.1984).

¶ 37 Here, the majority concludes that there is a "very tenuous relevancy connection" between the grandfather's previous assault of his daughter and Salazar's alternate suspect defense alleging that the grandfather assaulted the victim. Maj. op. at ¶ 26. I disagree.

¶ 38 As the majority concedes, who committed this assault was an issue for the jury to decide. Maj. op. at ¶ 15. There was significant evidence that that the victim may have been mistaken in her identification of Salazar: inconsistent statements by the victim to her mother and during the forensic interview about what happened; the victim was not wearing her glasses during the incidents; it was dark except for limited ambient light from the television or early morning sun; and the victim initially disclosed observing the perpetrator had a grey shirt and later added that he was wearing red shorts. Salazar sought to introduce evidence that he was not wearing a grey shirt on the night of the allegations; the victim's grandmother told her that Salazar turned off the television one night, possibly influencing the victim's recollection of whether Salazar was present; the victim made inconsistent statements about whether she was able to see the perpetrator in the first incident; and the victim was inconsistent in her statements on where and when she saw Salazar sitting in a chair after an incident. The grandfather was present in the home the night of the assault and

had access to the victim. The alleged previous sexual assault by the grandfather of his daughter involved a young family member of approximately the same age as the victim and included acts of digital penetration similar to those allegedly committed on the victim in this case. Hence, I suggest that given this set of circumstances, the alternate suspect evidence that the grandfather, and not the defendant, committed the assault was relevant.

¶ 39 The trial judge's decision finding this evidence relevant was not manifestly arbitrary, unreasonable, or unfair and, hence, does not amount to an abuse of discretion. I note that if the grandfather were being prosecuted for assaulting the victim in this case, his previous assault of his daughter would be deemed relevant and highly probative, irrespective of the remoteness of the earlier assault. § 16–10–301, C.R.S. (2011) (explaining that in a prosecution of a sexual offense, "[t]he general assembly finds that such evidence of other sexual acts is typically relevant and highly probative, and it is expected that normally the probative value of such evidence will outweigh any danger of unfair prejudice, even when incidents are remote from one another in time"); *see also People v. Rath*, 44 P.3d 1033 (Colo.2002) (holding that the trial court did not abuse its discretion in admitting evidence of two prior instances of uncharged misconduct by the defendant). Because Salazar seeks to prove that the grandfather assaulted the victim in this case, analogy to the rule that permits the admission of a past sexual act to prove a present sexual act of the same person appears apt and provides added support to establish the relevancy of this evidence.

¶ 40 Turning to the trial court's decision on whether this relevant evidence would be unfairly prejudicial under Rule 403, the trial court did not abuse its discretion when it ruled that this evidence was neither sufficiently confusing, nor misleading, nor unfairly prejudicial to be restricted. Rule 403 restricts relevant evidence which is unfairly prejudicial and substantially outweighs its probative value. *People v. Dist. Court*, 785 P.2d 141, 147 (Colo.1990). The trial court must apply Rule 403 to balance the probative value of the proffered evidence against any possible unfair prejudice. *Harris*, 43 P.3d at 225–26. "Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Masters v. People*, 58 P.3d 979, 1001 (Colo.2002) (quoting *U.S. v. McRae*, 593 F.2d 700, 707 (5th Cir.1979)).

¶ 41 The ultimate question under Rule 403 is whether the evidence's "value is worth what it costs." *McCormick* at 736; *see also* 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* (3d ed.2007) § 4:2 (stating that evidence that is probative may be excluded under Rule 403 if it is "more trouble than it is worth"). Thus, evidence of past crimes may be inadmissible not because it has no appreciable probative value, but because it has too much. IA John Henry Wigmore, *Wigmore on Evidence* § 58.2 (1983); *see also U.S. v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir.1984). Evidence has "too much" probative value when it creates the risk that the jury will assign more significance to the evidence than is warranted and may cause the jury to reach a decision on an improper basis. *See Masters*, 58 P.3d at 1001.

¶ 42 "Analyzing and weighing the pertinent costs and benefits is no trivial task. Wise judges may come to differing conclusions in similar situations." *McCormick* at 739. A trial court is "virtually always" in the better position to assess the admissibility of evidence under Rule 403. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387, 128 S.Ct. 1140, 170 L.Ed.2d 1 (2008). Accordingly, much leeway is given to trial judges who must fairly weigh probative value against probable dangers. *McCormick* at 740. In reviewing a trial court's decision, an appellate court should assume the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *Rath*, 44 P.3d at 1043. The test is strongly biased toward admissibility. *Masters*, 58 P.3d at 1001.

¶ 43 The majority concludes that the probative value of the evidence that the grandfather assaulted his daughter is substantially outweighed by the danger of confusing the issues and misleading the jury. Maj. op. at ¶ 27. However, it cites no facts from the record to support this conclusion. I note that the trial court specifically found that the jury would be able to weigh the alternate suspect evidence fairly.

¶ 44 In my view, the alternate suspect evidence has significant probative value not substantially outweighed by the danger of unfair prejudice. It has "a tendency to prove the proposition for which it is offered"—that is, that the grandfather, not the defendant, committed the assault in this case. *Fletcher*, 179 P.3d at 974.

¶ 45 "If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *U.S. v. Long*, 574 F.2d 761, 767 (3d Cir.1978). We do not look to see if we agree with the trial court, but, rather whether the trial court's decision fell within the range of reasonable options. *E–470*, 140 P.3d at 230–31. I would not, as an appellate judge, insert my judgment for that of the trial court's and therefore I would affirm the trial court's ruling. Hence, I respectfully dissent.